Jesús, Apelada, *v.* Sucesión Villamil, Apelante.

Apelación procedente de la Corte de Distrito de San Juan, Sección 1ª.

No. 927.—Resuelto en junio 27, 1913.

Hijos Naturales—Acción de Reconocimiento—Posesión Continua del Estado de Hijo Natural—Pruebas.—La demandante probó entre otros hechos que Ramón Pérez Villamil, causante de la sucesión demandada, era llamada por éste "hija" y ella a él "papá," y que públicamente le pedía su bendición y él se la daba; que al tiempo del nacimiento y concepción de la demandante el citado Pérez Villamil sostenía relaciones amorosas y vivía públicamente en concubinato con la madre de la demandante y que él atendía a su sostenimiento y necesidades, habiendo tenido con él varios hijos más y continuando dichas atenciones por espacio de seis o siete años. Se resolvió:

1. Que la prueba presentada era suficiente para llegar al convencimiento

de que la demandante es hija natural de Ramón Pérez Villamil y que éste por actos directos propios la reconoció como tal pública y privadamente.

2. Que el término de seis o siete años durante los cuales el citado Pérez Villamil atendió a las necesidades de la demandante y de su madre constituye una prueba suficiente *prima facie* de la posesión continua del estado legal de hija natural, que en el caso de ser impugnada por el demandado le impone a éste la obligación de probar lo contrario.

3. Que el hecho de que una hija natural no solicite de su supuesto padre natural permiso para contraer matrimonio, cuando aun no ha adquirido por completo su estado legal de hija natural reconocida, no destruye la eficacia de los actos de reconocimiento ejecutados por el padre natural con anterioridad o con posterioridad a dicho matrimonio, ni afecta tampoco a la continuidad de posesión del estado de hija natural.

4. Habiendo existido prueba contradictoria con respecto a varios de los hechos alegados y probados por la demandante y habiendo resuelto la corte inferior este conflicto en sentido favorable a la demandante, no hay nada en los autos que revele pasión, parcialidad, prejuicio o grave error por parte del juez sentenciador, para revocar la conclusión a que él llegó.

5. Habiendo existido prueba suficiente tendente a demostrar los actos de reconocimiento ejecutados por el padre de la demandante, la corte sentenciadora no estaba obligada a dar crédito a los testigos que trataron de probar que en la fecha del nacimiento de la demandante su madre había tenido relaciones con otros hombres, aun cuando tales manifestaciones no hubieran sido contradichas e impugnadas por otra prueba, ni por hechos o circunstancias del caso.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. Bosch* y *Soto.*

Abogado de la apelada: *Sr. José G. Torres.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Los hechos alegados en la demanda presentada en julio 14 de 1911, son los siguientes:

"1. Que la demandante nació en el pueblo de Río Grande el día 19 de enero de 1890, y por tanto era mayor de edad y residente del distrito.

"2. Que la sucesión demandada se componía de su viuda Josefa Romano Cestari y sus hijos legítimos Rosa, José, Ramón y Lina, residentes todos en Río Piedras de este distrito judicial.

"3. Que Ramón Pérez Villamil en sus relaciones amorosas con Francisca de Jesús tuvo a la demandante, la que fué considerada siempre pública y privadamente como hija suya por el expresado Ramón Pérez Villamil. Y que en la época de la concepción y nacimiento de la demandante, sus referidos padres eran solteros y podían contraer matrimonio.

"4. Que Ramón Pérez Villamil falleció el día 16 de abril de 1911. Y solicitó la demandante que se dictara sentencia en la que se declarara que era hija natural reconocida de Ramón Pérez Villamil, con derecho a los beneficios que le concede el Código Civil."

Habiendo sido negados por los demandados los hechos que favorecían a la demandante, se procedió al juicio del caso, declarando el juez sentenciador, que los hechos estaban a favor de la demandante según habían sido alegados en la demanda, y expresando más específicamente que al tiempo del nacimiento y concepción de la demandante, Ramón Pérez Villamil sostenía relaciones amorosas y vivía públicamente en concubinato con Francisca de Jesús, habiéndose trasladado a España antes del nacimiento de la demandante, regresando después de nacida ésta, sin haber interrumpido sus relaciones amorosas con la referida Francisca de Jesús; que María de Jesús fué siempre tenida pública y privadamente por Ramón Pérez Villamil como su hija natural, gozando de la posesión de tal estado de hija natural, y habiéndose probado dicha posesión de estado por los actos directos del expresado Villamil y de su familia.

Tanto las partes como la corte están de acuerdo en el hecho de que habiendo nacido la demandante el día 19 de enero de 1890, la cuestión relativa a su reconocimiento debe regularse por las disposiciones del artículo 135 del Código Civil Español que prescribe lo siguiente:

"El padre está obligado a reconocer al hijo natural en los casos siguientes:

"1. Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

"2. Cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos directos del mismo padre o de su familia."

Este es un caso en el que no existe nada en los autos o en la prueba que revele pasión, parcialidad, prejuicio o grave error cometido por el juez sentenciador al llegar a sus con-

clusiones, y, por tanto, debe darse la debida consideración
a toda la prueba en que las mismas se fundan, a menos que
resulte esencialmente increíble. Hubieron numerosos testigos
que declararon con respecto al estado de concubinato público
que existió entre los padres de la demandante. Los apelan-
tes admiten en sustancia, que por lo menos otros dos hijos
habían nacido de los mismos padres. Sin embargo alegaron
éstos y trataron de probar en el juicio, que María de Jesús
era de procedencia distinta. También demostró la prueba
que Ramón Pérez Villamil por un período de seis u ocho años
por lo menos, después del nacimiento de la demandante, eje-
cutó actos de los cuales puede deducirse el reconocimiento
de la demandante, existiendo prueba suficiente independien-
temente de las declaraciones de la demandante y de Isabel,
Rosa y Ramón de Jesús, hermanos de dicha demandante. La
corte no estaba de modo alguno obligada a dar crédito a los
testigos que trataron de probar que en la fecha del naci-
miento de su hija María, Francisca de Jesús había tenido
relaciones con otros hombres, aun cuando las manifestacio-
nes hechas por dichos testigos no hubieran sido contradichas
o impugnadas por otra prueba y otros hechos y circunstan-
cias del caso.

Todas las cuestiones que han sido presentadas en este
caso pueden resolverse por el fundamento de que hubo con-
tradicción en la prueba, pero existe una que merece un exa-
men más detenido de los hechos. Alegan los apelantes que
aunque hayan habido hechos aislados ejecutados por el padre,
que en cierto modo tienden a probar el reconocimiento de la
demandante, sin embargo, no hubo prueba suficiente que mos-
trara la posesión continua de ese estado de hija natural, jus-
tificada por sus actos directos o los de su familia.

Hubo prueba tendente a mostrar que María de Jesús lla-
maba a Ramón Pérez Villamil "papá" y que éste la llamaba
a ella "hija," que dicha niña públicamente le pedía su ben-
dición y él se la daba; que era un hecho público que ella le
llamaba "papá," que se llevaba leche a la casa de Francisca

de Jesús por orden de Ramón Pérez Villamil, y que éstos y
otros hechos continuaron así hasta que María tenía seis o
siete años de edad; que su supuesto padre era afectuoso con
ella no solamente antes, sino después de su matrimonio, y
se presentó además otra prueba en igual sentido general. Si
estos hechos existieron por sí solos o hubo aun otros más de
igual naturaleza, podríamos tal vez convenir con los apelan-
tes, en que la posesión continua del estado legal de hija natu-
ral reconocida, justificada por los actos directos del padre,
no quedaría demostrada, pudiendo decirse que estas mani-
festaciones no mostraban otra cosa que los actos bondadosos
de un hombre hacia un niño que veía a su lado, y ella pudiera
tal vez llamarle "papá" por haber oído a otros que así lo
llamaban, habiendo consentido él tal conducta por tratarse
de un niño de poca edad. Puede también que esta línea de
conducta hubiera sido observada por él sin que tuviera inten-
ción alguna de reconocer a la niña, aun cuando estuviera con-
vencido de que era suya. Es posible que hubiera estado dis-
puesto al principio a reconocerla, pero que después cambiara
de parecer. Pero ocurrieron otros hechos y circunstancias
en el caso. El primero de éstos es el hecho casi innegable
de que Ramón Pérez Villamil sostuvo relaciones amorosas
con Francisca de Jesús y que ésta había tenido otros hijos
como resultado de dichas relaciones. Además, no vemos que
exista motivo alguno para poner en duda la conclusión a que
llegó la corte, de que estas relaciones continuaron así hasta
la fecha del nacimiento de María y después de la misma. Es-
tamos convencidos de que Ramón Pérez Villamil fué su pa-
dre. Esta conclusión se deduce de toda la prueba que fué pre-
sentada. Francisca de Jesús, madre de María, vivía a pocos
metros de distancia de la casa de Ramón Pérez Villamil y
apenas existe duda alguna de que éste atendía a sus necesi-
dades o contribuía a su sostenimiento aun después del naci-
miento de María. Con respecto a dos de sus hijos o sean, Isa-
bel y Ramón, se ha admitido virtualmente que poseían ellos
ese estado continuo de hijo natural a que se refiere el artículo

135 del Código Civil.  La prueba es aun más concluyente con respecto a Isabel.  Ella vivía en la casa de Ramón Pérez Villamil después de su matrimonio.  Era madrina de una de las hijas legítimas de Ramón Pérez Villamil y una de estas hijas de Pérez Villamil, era madrina de un niño de Isabel.  Isabel se casó en la casa de su padre.  Teniendo en cuenta estos hechos y en vista de las relaciones que existían entre Ramón Pérez Villamil por una parte, y Francisca, Isabel y Ramón por la otra, muy poca prueba adicional sería necesaria para mostrar que existían actos directos de Ramón Pérez Villamil con respecto a María, de conformidad con el artículo 135 del Código Civil.  Pero la prueba fué todavía más terminante que lo que hemos dicho.  Sin hacer mención por ahora de Isabel, María, Ramón y Francisca de Jesús u otros testigos que pudieran estar interesados o tener prejuicios, creemos que hubo prueba tendente a mostrar que María en sus primeros años iba frecuentemente a la casa de su padre, que comía allí, que jugaba en dicha casa y paseaba con los hijos legítimos de Don Ramón.  Uno de esos testigos fué el facultativo que asistió al alumbramiento de María y que declaró que lo hizo a petición de Don Ramón y que éste frecuentaba la casa y Don Ramón trataba a María como su propia hija; que las relaciones continuaron después de ser mayor María y aun después de haberse casado, visitando tanto María como Isabel la casa de su padre.  Otros testigos declararon en igual sentido.

Hasta aquí hemos venido examinando la prueba sin tener en cuenta la declaración impugnada de Francisca de Jesús y sus hijos.

Sin embargo, declararon María, Isabel, Ramón y Francisca.  Si es que se ha hecho alguna impugnación a sus declaraciones, ésta ha sido solamente por el fundamento de ser partes interesadas y por la prueba contraria que ha sido presentada por los demandados.  El juez tenía derecho a creer igual a todas las dichas declaraciones y no vemos que exista esencialmente nada, en las mismas por lo que resulten

improbables. Sus manifestaciones tendían a mostrar actos directos del padre y de su familia durante un período que comprendía toda la vida de María. También declaró Isabel que ella vió a su padre en su última enfermedad y que éste preguntó por María, quien no pudo venir por encontrarse encinta. Los demandados admitieron el hecho de que Isabel fuera a la casa, pero negaron que ella viera a su padre. Con respecto a la credibilidad no vemos que exista más razón para no dar crédito a las declaraciones prestadas por los testigos de la demandante que a las de los demandados.

Los apelantes dieron alguna importancia al hecho de que María tratara de comunicarse por escrito o de alguna otra manera con su padre, en la época de su matrimonio, para solicitar su permiso, y que éste no le contestó. Su omisión de hacer esto podría tener otras numerosas explicaciones que no fuera precisamente la de considerar que no existían las relaciones continuas entre el padre natural y su hija. Podría ser que él no estuviera contento con ella o con el matrimonio. No vemos por qué sea necesario el consentimiento para casarse, de un padre, a una hija que no ha adquirido completamente su estado legal de hija natural reconocida, pero de todos modos según ya hemos dicho en el caso de *Amsterdam v. Puente,* 16 D. P. R., 554, el dejar de hacer dicho reconocimiento en determinado caso no podría destruir la fuerza de los actos anteriores y posteriores del padre, o la posesión anterior de dicho estado legal.

También creemos que si un demandante puede probar actos claros que se extiendan a un período de seis o siete años, habrá dicho demandante probado un buen caso *prima facie* de la posesión continua del estado legal como hijo natural, y que el peso de la prueba incumbe al demandado y recaería en los demandados la obligación de probar que el hecho es de otro modo.

No apareciendo de los autos que se haya cometido error alguno, la sentencia apelada debe ser confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, del Toro y Aldrey.

En julio 5, 1913, se interpuso apelación para ante la Corte Suprema de los Estados Unidos.