ELBA MARÍA CORREA, conocida por ELBA MARÍA PIZÁ CORREA, demandante y apelante, *v.* SUCN. DE JUAN PIZÁ BISBAL, ETC., demandados y apelados.

Núm. 9047.—*Sometido:* Enero 17, 1945. *Resuelto:* Mayo 9, 1945.

---

*Luis Mercader* y *J. Córdova Rivera,* abogados de la apelante; *E. Pérez Casalduc,* abogado de los apelados.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Este es un caso de filiación entablado por la demandante contra la Sucesión de Juan Pizá Bisbal. La demandante alega que nació como resultado de relaciones sexuales sostenidas en el 1917 entre su madre y Pizá; que Pizá estaba casado para dicha fecha con la demandada, María Salicrup Mesorana, quien al morir Pizá, el 23 de mayo de 1943, le sobrevivió como su viuda; que Pizá instaló a la madre de la demandante en una casa de su propiedad al salir encinta, y la visitaba allí; que al nacer la demandante Pizá se comportaba como el padre de ella hasta algunos meses antes de su muerte, no solamente proporcionándole los alimentos, sí que también prodigándole los cariños propios de un padre; que después del mes de mayo de 1942, Pizá continuó esta misma conducta, tratando a la demandante como su hija, "ofreciéndole a ella y a la madre hacerlo por escrito para que la actora no tuviera inconvenientes en el porvenir, acción voluntaria y reconocimiento espontáneo que no le fué posible efectuar por escrito debido a que no lo permitió la enfermedad del señor Pizá de que murió para la fecha antes dicha." Los demandados solicitaron la desestimación de la demanda por el fundamento de que no aducía hechos suficientes para constituir una causa de acción; también solicitaron sentencia sumariamente. La corte inferior dictó sentencia a favor de los demandados y la demandante ha apelado.

■ El único punto sustancial en apelación([1]) es si una hija adulterina obtiene el reconocimiento de su padre como hija natural por razón de la conducta de su padre hacia ella con posterioridad a la fecha en que entró a regir la Ley núm. 229, Leyes de Puerto Rico, 1942 ((1) pág. 1297). Dicha Ley dispone en parte, en su sección 1, que "Serán hijos naturales todos los hijos nacidos fuera de matrimonio con posterioridad a la fecha de vigencia de esta Ley, independientemente de que sus padres hubieren podido o no contraer matrimonio al tiempo de la concepción de dichos hijos." Esta disposición de su propia faz opera prospectivamente. La sección 2, por el contrario, dispone en parte, que "Los hijos nacidos fuera de matrimonio con anterioridad a la fecha de vigencia de esta Ley y que no tenían la condición de hijos naturales según la legislación anterior, *podrán ser reconocidos por acción voluntaria* de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, a todos los efectos legales". (Bastardillas nuestras).

■■ El punto fundamental en este caso es si las actuaciones de un padre con posterioridad a 1942, manteniendo a un hijo adulterino y admitiendo su paternidad, operan para conferir a tal hijo nacido antes de 1942, el *status* de un hijo natural; es decir, si tales "actuaciones" son el reconocimiento "por acción voluntaria" del padre que contempla la sección 2 de la Ley núm. 229. Al enfocarse esta cuestión, debemos tener en cuenta que la Legislatura no aprobó esta Ley en un vacío. Se aprobó a la luz de nuestro Código Civil, especialmente del artículo 125 del mismo. Esto es evidente no sólo de los términos del propio estatuto, sí que también de una discusión en la Sala de Sesiones del Senado

---

[1] La demandante también alega que la corte de distrito no cumplió con ciertos requisitos de calendario al señalar para vista la moción para que se dictara sentencia sumariamente. Pero no se opuso a ello en la corte inferior, y por tanto renunció a la cuestión. De cualquier modo, la conclusión a que hemos llegado en este caso sólo requiere se investigue si la demanda aduce una causa de acción, y por tanto es innecesario que exploremos aquí los requisitos de nuestra Regla en cuanto a sentencias sumarias.

entre los senadores Géigel Polanco e Iriarte. Actas del Senado, 1942, págs. 799–801. Al mismo efecto Muñoz Morales, La Ley núm. 229 de 1942 y sus Implicaciones, La Toga, edición del 16 de octubre de 1944, págs. 6–7.

El artículo 125 del Código define como los hijos naturales "los nacidos, fuera de matrimonio, de padres que al tiempo de la concepción de aquéllos hubieran podido casarse, sin dispensa o con ella." El artículo 125 establece entonces dos métodos para el reconocimiento de un hijo natural: (1) por la acción voluntaria del padre "en el acta de nacimiento o en otro documento público"; o (2) por procedimiento judicial en el que "El padre está *obligado* a reconocer al hijo natural: . . . 2. Cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos del mismo padre o de su familia. . . . ". (Bastardillas nuestras).

Por tanto es evidente que bajo el artículo 125 se confiere status como hijo natural (1) voluntariamente por el padre sólo mediante instrumento público; o (2) involuntariamente mediante procedimiento judicial que obligue al padre putativo a reconocer al hijo de comportarse el padre en determinada forma. La sección 1 de la Ley núm. 229 de 1942 elimina la barrera del adulterio que en el pasado había interpuesto el artículo 125 contra el reconocimiento de los hijos como hijos naturales. Pero la sección 1 es prospectiva y se refiere únicamente a los hijos nacidos con posterioridad a la fecha de la vigencia de la ley. Y la sección 2, que se refiere a los hijos nacidos con anterioridad a la ley, es limitada; la Legislatura tuvo cuidado con ella para no alterar relaciones ya existentes. Sin embargo, la sección 2 sí provee que tales hijos adulterinos también pueden ser reconocidos como hijos naturales—pero sólo "por acción voluntaria" de sus padres.

Cuando la sección 2 es leída a la luz del artículo 125 del Código, es obvio que las actuaciones y manifestaciones del

padre admitiendo la paternidad contenidas en la demanda, no son la "acción voluntaria" que contempla la sección 2. Acción voluntaria, según se indica en el artículo 125, significa el otorgamiento por el padre de un acta de nacimiento, escritura o cualquier otro documento público. Las alegaciones de la demanda muy bien pudieron dar derecho a la demandante bajo el artículo 125 a obligar al padre a reconocerla involuntariamente como hija natural a tenor con una orden judicial a ese efecto, de no haber sido una hija adulterina. Pero la sección 2 de la Ley núm. 229, al disponer el posible reconocimiento de los hijos adulterinos que, como la demandante, nacieron antes de mayo de 1942, lo limita al reconocimiento voluntario solamente, dentro del significado de dicha frase en el artículo 125 (Actas del Senado, supra; Muñoz Morales, supra). Esto exige una inscripción, un testamento o cualquier otro documento público otorgado por el padre. Y eso no ocurrió aquí.

*La sentencia de la corte de distrito será confirmada.*