Ex parte Ramón Hernández Martínez, peticionario y apelante.

Núm. 9112.—*Sometido:* Mayo 23, 1945. *Resuelto:* Junio 22, 1945.

*A. L. López,* abogado del apelante.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Ramón Hernández Martínez radicó ante la Corte de Distrito de Humacao una solicitud *ex-parte* para que se declarase a él y a sus doce hermanos, únicos y universales herederos ab intestato de doña Francisca Martínez, madre de los trece.

La evidencia ofrecida en apoyo de la solicitud estableció los hechos siguientes:

Don Gregorio Hernández Rodríguez, natural de España, vino a Puerto Rico después de haber contraído allá matrimonio con Patricia Lacalle. Ya en Puerto Rico, Hernández sostuvo relaciones amorosas con Francisca Martínez, de las cuales nacieron los trece reclamantes de la herencia materna. Los nombres y fechas del nacimiento de cada uno de los trece hijos son:

Miguel Ramón, septiembre 25, 1895
Francisco, julio 12, 1897
Valentín, junio 12, 1898
Adela, marzo 17, 1900
Gregorio, noviembre 1, 1901
Petra, diciembre 15, 1902
Modesto, febrero 25, 1904
Serafina, julio 2, 1905
Florencio, abril 5, 1907
Jorge, abril 30, 1909
Nicolás, diciembre 19, 1911
Mariano, mayo 11, 1913
Alfonso, julio 23, 1915

El matrimonio entre Gregorio Hernández y Patricia Lacalle existió hasta mayo 13 de 1926, cuando quedó disuelto por sentencia de divorcio dictada por la Corte de Distrito de Humacao. En septiembre 19 de 1926, Gregorio Hernández, divorciado y Francisca Martínez, soltera, contrajeron matrimonio e hicieron constar en el acta matrimonial lo siguiente:

"Que ambos contrayentes han vivido maritalmente, habiendo procreado los hijos siguientes: (aquí los nombres y edades de los trece hijos), los cuales se reconocen."

En octubre 17 de 1944, la corte inferior dictó una resolución declarando herederos universales de doña Francisca Martínez a sus hijos legitimados Petra, Modesto, Serafina, Florencio y Jorge Hernández y Martínez. La solicitud fué declarada sin lugar en cuanto a los otros ocho hijos. El pe-

ticionario apeló, alegando que la corte inferior erró al interpretar las disposiciones del Código Civil referentes al reconocimiento de hijos naturales.

Los fundamentos de la resolución recurrida son:

1. La condición o estado de un hijo natural o ilegítimo ha de determinarse por la ley en vigor a la fecha de su concepción o nacimiento, según el caso. (*Núñez* v. *Lacot,* 32 D.P.R. 81; *Morales* v. *Sucn. Cerame,* 30 D.P.R. 843; *Ramírez* v. *Ramírez,* 30 D.P.R. 617).

2. Habiéndose probado que el peticionario y todos sus hermanos son hijos de un hombre casado y de una mujer soltera, la condición o estado de cada uno de los hijos debe ser determinada en la forma siguiente:

(A) Los primeros cinco hijos, nacidos durante el período de 1895 a noviembre 1 de 1901, no son hijos naturales tal y como definía a éstos el artículo 119 del Código Civil que rigió en Puerto Rico hasta junio 30 de 1902.

(B) Que tampoco son hijos naturales los tres últimos, nacidos durante el período de diciembre de 1911 a julio de 1915, de acuerdo con lo dispuesto en el artículo 193 del Código Civil entonces vigente, o sea el que empezó a regir en marzo 9 de 1911.

(C) Que de acuerdo con las disposiciones legales citadas, las cuales son idénticas en ambos códigos, ninguno de los ocho hijos mencionados puede ser considerado como hijo natural, ni puede tampoco ser reconocido o legitimado, ya que todos fueron procreados y nacieron fuera de matrimonio, cuando sus padres no hubieran podido casarse por estar el padre casado con Patricia Lacalle. Siendo adulterina la filiación de dichos ocho hijos, éstos no podían ser legitimados por el subsiguiente matrimonio de sus padres. (Manresa, Tomo I, pág. 536; *Rivera* v. *Sucesión I. Díaz,* 36 D. P.R. 541).

(D) Los cinco hijos restantes, Petra, Modesto, Serafina, Florencio y Jorge, nacidos durante el período de diciembre

15 de 1902 a abril 30, 1909, nacieron bajo la vigencia del Código Civil que empezó a regir el 1 de julio de 1902. De acuerdo con el artículo 180 de dicho Código, que provee que "hijos ilegítimos son los nacidos fuera de matrimonio", y el artículo 193 que dispone que "los hijos nacidos fuera del matrimonio son legitimados por el subsiguiente matrimonio de sus padres, si con arreglo a la ley pudieren contraerlo o por autorización de este Código", los mencionados cinco hijos son hijos ilegítimos de Francisca Martínez, quedaron legitimados por el subsiguiente matrimonio de sus padres y tienen, de acuerdo con el artículo 194 del mismo Código, los mismos derechos y deberes de los hijos legítimos.

Arguye el apelante, que los trece reclamantes son hijos naturales de Francisca Martínez y por ella reconocidos; que ese hecho quedó establecido por la evidencia documental; que las manifestaciones hechas por los padres en el acta de matrimonio no pueden alterar el *status* de hijos naturales de Francisca Martínez, adquirido por los reclamantes desde el momento en que nacieron; que el principio de que la condición de un hijo natural o legitimado ha de determinarse por la ley en vigor en la fecha de su concepción. o nacimiento, no es de aplicación al presente caso, pues lo que aquí se discute es el derecho de los hijos naturales de doña Francisca Martínez a heredar a su madre, y no se trata de la herencia del padre.

No es cierto, como alega el apelante, que de las actas de nacimiento presentadas en evidencia aparece que todos los presuntos herederos fueron inscritos como hijos naturales reconocidos de Francisca Martínez. Hemos examinado dichas actas y encontramos que los tres primeros hijos, Miguel Ramón, Francisco y Valentín, y el séptimo, Modesto, fueron inscritos como hijos de matrimonio civil de don Gregorio Hernández, natural de España, vecino de San Lorenzo y de doña Francisca Martínez, natural y vecina de San Lorenzo. Todos los demás fueron inscritos como hijos naturales de doña Francisca Martínez.

De la prueba ofrecida por el propio peticionario resulta que los trece reclamantes son el fruto de las relaciones amorosas habidas entre Gregorio Hernández y Francisca Martínez; y que en las fechas de la concepción y del nacimiento de cada uno de ellos, los padres no hubieran podido casarse, pues aun cuando la madre era soltera el padre estaba casado con Patricia Lacalle.

██ La ley aplicable a los primeros cinco hijos, nacidos desde septiembre 25, 1895 a noviembre 1, 1901 es la contenida en los artículos 119, 120 y 122 del Código Civil que rigió en Puerto Rico hasta junio 30 de 1902, que disponían lo siguiente:

"Artículo 119.—Sólo podrán ser legitimados los hijos naturales.
Son hijos naturales, los nacidos fuera de matrimonio, de padres que al tiempo de la concepción de aquéllos pudieron casarse sin dispensa o con ella."

"Artículo 120.—La legitimación tendrá lugar:
1. Por el subsiguiente matrimonio de los padres.
2. Por Concesión Real.

"Artículo 122.—Los legitimados por subsiguiente matrimonio disfrutarán de los mismos derechos que los hijos legítimos."

El derecho de estos primeros cinco hijos se basa en la alegada legitimación de los mismos por el matrimonio de los padres celebrado en 1926. En sus Comentarios al artículo 119, supra, dice Manresa:

"El matrimonio no legitima por sí solo más que a los nacidos en él, aunque hayan sido concebidos antes; y para que legitime a los anteriormente nacidos, es preciso que concurra en ellos la condición de naturales y el reconocimiento de los padres: de modo, que sólo concurriendo estos dos requisitos pueden ser legitimados. Toda otra interpretación respecto a la fuerza *ipso jure* del matrimonio subsiguiente, . . . . . . se sale de los términos de la ley."

Faltando a cada uno de dichos cinco hijos la condición de hijo natural, por ser hijos de padre casado y madre soltera que al tiempo de la concepción de aquéllos no podían casarse,

ninguno de ellos podía ser legitimado por el subsiguiente matrimonio de los padres, ni en ninguna otra forma.

La condición o estado de los tres últimos hijos nacidos entre diciembre 19, 1911 y julio de 1915 debe ser determinada de conformidad con lo dispuesto en el Código Civil que empezó a regir el 9 de marzo de 1911. De acuerdo con los artículos 187 a 191 de dicho Código, sólo los hijos naturales tienen derecho a ser legitimados por el subsiguiente matrimonio; y el artículo 193 considera "hijos naturales" a los nacidos fuera de matrimonio, de padres que al tiempo de la concepción o del nacimiento de aquéllos pudieron casarse sin dispensa o con ella. Ese mismo artículo disponía que el hijo natural podía ser reconocido por el padre y la madre, conjuntamente, o por uno de ellos solamente, en el acta de nacimiento o por testamento o mediante escritura pública.

La corte inferior no erró al resolver que estos tres últimos hijos, al igual que los cinco primeros, no fueron ni podían ser legitimados por el subsiguiente matrimonio de los padres.

¿Fueron o podían ser reconocidos el peticionario y sus hermanos, por las manifestaciones que aparecen en las actas de nacimiento, hechas por los padres o por la madre solamente? La contestación debe ser en la negativa, en cuanto a los primeros cinco y a los últimos tres hijos, por carecer todos ellos de la condición de hijos naturales, sin la cual ni el padre ni la madre podrían reconocerles legalmente, de acuerdo con la ley vigente en las fechas en que nacieron. Art. 129, Código Civil Español; art. 193, Código Civil de 1911.

¿Qué efecto legal, si alguno, pudo tener el acto de la madre, al inscribir a los primeros cinco hijos como sus hijos naturales?

El artículo 129 del Código Español disponía que "el hijo natural puede ser reconocido por el padre y la madre con-

juntamente, o por uno solo de ellos''. Y el artículo 130 proveía lo siguiente:

"En el caso de hacerse el reconocimiento por uno solo de los padres, se presumirá que el hijo es natural, si el que lo reconoce tenía capacidad legal para contraer matrimonio al tiempo de la concepción.''

Cuando siendo soltera y teniendo capacidad legal para contraer matrimonio, Francisca Martínez inscribió como su "hijo natural" a Adela, nacida en marzo 17 de 1900 y a Gregorio, nacido en noviembre 1 de 1901, el art. 130 del Código Civil Español, supra, regía aún en esta isla.

. En sus Comentarios a los artículos 129 y 130, (Tomo 1, págs. 563–4) dice Manresa:

"Interpretando el art. 130, declara el Tribunal Supremo, en sentencia de 9 de junio de 1893, que dicho artículo no define la filiación natural, sino que dándola por definida en el 119, y presuponiendo la facultad que el 129 otorga a los padres para que cada cual de ellos pueda reconocer separadamente al hijo que tenga esa calidad, se limita a declarar como una consecuencia lógica de tal facultad, que el hijo así reconocido *se presume* natural si el que lo reconoce tenía capacidad para contraer matrimonio al tiempo de la concepción. Siendo esto así las presunciones pueden destruirse mediante prueba en contrario, y el Código permite expresamente la impugnación en el art. 138, que concede a las personas que resultaren perjudicadas por el reconocimiento del hijo natural, acción eficaz para destruir la presunción, no solamente cuando se hubiera faltado a las prescripciones relativas al acto del reconocimiento, sino también cuando éste recayere en favor de un hijo que no reúne las condiciones que para ser calificado de natural requiere el art. 119.''

En el caso de autos, la presunción que surgió a favor de dichos hijos, como consecuencia de las declaraciones de la madre, fué destruída por la prueba en contrario presentada por el propio peticionario, mediante la cual se estableció que todos y cada uno de los hijos fueron concebidos y nacieron cuando sus padres no estaban en libertad para contraer matrimonio.

■ El pronunciamiento de la resolución recurrida en cuanto a los otros cinco hijos, dice así:

"Petra, que naciera en 15 de diciembre de 1902, Modesto, Serafina, Florencio y Jorge, que nacieron desde entonces hasta el 30 de abril de 1909, fecha en que naciera éste último, son hijos ilegítimos de Francisca Martínez, que fueron más tarde legitimados por el matrimonio subsiguiente de sus padres, doña Francisca Martínez y don Gregorio Hernández Rodríguez, efectuado en San Lorenzo, el día 20 de septiembre de 1926 y en cuyo acto reconocieron los hijos habidos en sus relaciones amorosas."

Las disposiciones legales en que se basa el anterior pronunciamiento son las del Código Civil que comenzó a regir el 1º de julio de 1902 y estuvo en vigor hasta el 9 de marzo de 1911. El artículo 180 de dicho cuerpo legal, define a los "hijos ilegítimos" como aquellos "nacidos fuera del matrimonio", sin establecer distinción alguna entre el hijo ilegítimo cuyos padres no estaban en la fecha de su concepción o nacimiento en libertad para contraer matrimonio, por ser uno de ellos casado; y el hijo cuyos padres hubieran podido casarse en la fecha de la concepción o del nacimiento.

El art. 193 del mismo Código Civil de 1902, dispone:

"Los hijos nacidos fuera del matrimonio son legitimados por el subsiguiente matrimonio de sus padres, si con arreglo a la ley pudieren contraerlo o por autorización de este Código."

A primera vista, el artículo transcrito parece proveer que todos los hijos nacidos fuera de matrimonio, tanto los naturales como los adulterinos, quedan legitimados por el subsiguiente matrimonio de sus padres. Si el legislador se hubiese detenido ahí, su intención hubiera quedado claramente expuesta. Empero, agregó la frase "Si con arreglo a la ley pudieren contraerlo", y es esa frase la que nos obliga a interpretar la intención que tuvo el legislador al redactar el artículo 193 en la forma en que lo hemos transcrito. ¿Se refiere el legislador a la capacidad legal de los padres, para casarse, en el momento de la concepción o del nacimiento del

niño, o a la capacidad legal para contraer el matrimonio subsiguiente, base y fundamento de la alegada legitimación?

A nuestro juicio lo, que quiso decir el legislador es que el subsiguiente matrimonio de los padres de hijos ilegítimos produce el efecto legal de legitimar a dichos hijos, si los padres hubieran podido contraer matrimonio en la fecha en que aquéllos nacieron. En otras palabras, el legislador quiso conservar la distinción entre el hijo natural, nacido fuera del matrimonio de padres libres para casarse, y el hijo adulterino, nacido también fuera del matrimonio, pero de padres que en la fecha de su nacimiento no hubieran podido casarse por ser ambos o por lo menos uno de ellos, casado. Esa es la única interpretación lógica que puede darse a la frase ''si con arreglo a la ley pudieren contraerlo''. Sería un absurdo resolver que el legislador se refería al matrimonio subsiguiente, pues es obvio que si éste se celebrara en contravención de la ley, sería nulo y la legitimación no existiría.

La interpretación que hemos dado a los artículos 180 y 193, supra, encuentra apoyo en las disposiciones del artículo 197 del mismo Código, que dice:

''La declaración de legitimidad no podrá obtenerse si al tiempo del nacimiento del hijo no hubieran podido sus padres contraer matrimonio con arreglo a este Código.''

La corte inferior erró al declarar que los cinco hijos mencionados habían sido legitimados por el subsiguiente matrimonio de los padres. Empero, la resolución recurrida, en cuanto declara herederos de Francisca Martínez a sus hijos Petra, Modesto, Serafina, Florencio y Jorge, debe ser confirmada, por razones distintas a las expresadas por la corte inferior como fundamentos de su decisión.

■ El Código Civil que empezó a regir el primero de julio de 1902, que era la ley vigente en las fechas en que nacieron todos y cada uno de dichos cinco hijos, disponía en su artículo 187, lo siguiente:

''El hijo ilegítimo puede ser reconocido de cualquier modo, por el padre y la madre conjuntamente, o por uno solo de ellos.''

De conformidad con lo dispuesto en dicho artículo, la inscripción que de cada uno de dichos cinco hijos hizo Francisca Martínez en el Registro Civil declarando que el niño era "hijo natural de la declarante", produjo el efecto legal de reconocer al niño así inscrito como hijo natural de Francisca Martínez y como tal, con derecho a participar en la herencia intestada de la madre, de acuerdo con lo dispuesto en el artículo 191 del mismo cuerpo legal. Véase: *Lucero* v. *Herederos de Vilá,* 17 D.P.R. 152.

Estamos de acuerdo con la corte inferior en que la Ley núm. 229 de mayo 12 de 1942 no es aplicable a los hechos y circunstancias de este caso, por ser dicha ley de carácter prospectivo. Véase: *Correa* v. *Pizá,* 64 D.P.R. 987.

*La resolución recurrida debe ser confirmada.*