Zaida Elicier, asistida de y con el concurso de su marido Ángel M. Rivera, demandante y apelante, *v.* Sucesión de Genaro Cautiño Insua, Monserrate Bruno Domínguez Viuda de Cautiño y Genaro Cautiño Bruno, demandados y apelados.

Núm. 9863.—*Sometido:* Junio 3, 1949. *Resuelto:* Julio 29, 1949.

*Samuel R. Quiñones,* abogado de la apelante; *R. Rivera Zayas, G. Rivera Cestero* y *Milton F. Rúa,* abogados de los apelados.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

Cuatro causas de acción alegó Zaida Elicier en la demanda radicada por ella contra la Sucesión de Genaro Cautiño Insua, compuesta de su viuda Monserrate Bruno Domínguez de Cautiño y de su hijo Genaro Cautiño Bruno. En la primera sostuvo que allá para los años 1918 al 1920 Genaro Cautiño Insua y Margaríta Elicier sostuvieron relaciones sexuales, como resultado de las cuales nació ella el 19

de febrero de 1920; que durante todo el tiempo transcurrido desde su concepción y nacimiento hasta el fallecimiento de Genaro Cautiño Insua en primero de mayo de 1946 éste la tuvo por hija; que a virtud de esa acción voluntaria de Genaro Cautiño Insua ella adquirió el carácter de hija natural reconocida de él; y que los demandados por acción voluntaria de ellos también la han reconocido como hija de Genaro Cautiño Insua, habiéndola tratado siempre el demandado Genaro Cautiño Bruno como su hermana. En la segunda causa alegó que Genaro Cautiño Insua falleció bajo testamento otorgado el día 21 de abril de 1946 y que en el mismo instituyó como únicos y universales herederos a los demandados; que a su fallecimiento éste era dueño de bienes muebles e inmuebles radicados en Puerto Rico con un valor total de tres millones de dólares; que los demandados están efectuando la partición de dichos bienes y verificando operaciones de inventario, liquidación y división de los mismos, a espaldas de ella; y que éstos se han negado a darle los frutos y rentas que en tales bienes le corresponden así como a rendirle cuentas de ellos. En la tercera adujo que los demandados han venido percibiendo para su propio beneficio los frutos y rentas de las propiedades dejadas por su causante. Y en la cuarta que ella y los demandados no han podido ponerse de acuerdo en cuanto a la forma de hacer el inventario, avalúo, distribución y demás operaciones particionales de dichos bienes.

A la demanda así instada presentó el demandado Cautiño Bruno una moción para desestimar por falta de hechos constitutivos de causa de acción, acompañando a la misma copia fiel del acta del único matrimonio celebrado el 16 de julio de 1905 entre Genaro Cautiño Insua y la codemandada Monserrate Bruno Domínguez, con quien según se alegó estuvo aquél casado hasta el momento mismo de su muerte. Al declarar con lugar esa moción, la corte inferior hizo constar en el curso de su resolución que ". . . las partes convinieron y estipularon verbalmente en corte abierta que se tuviera por

consignado en la demanda *que el alegado reconocimiento de la demandante como hija del causante por acción voluntaria de éste y de los demandados no consta en una inscripción, en un testamento o en ningún documento público del causante o de los demandados.''* (Bastardillas nuestras.) Posteriormente y a petición de ambos demandados, la corte dictó sentencia a favor de éstos y desestimó las causas de acción segunda, tercera y cuarta de la demanda, sin perjuicio de que continuara en pie la primera causa de acción para su litigio por las partes.

De la sentencia así dictada apeló la demandante y sostiene ahora que la corte inferior erró (1) al declarar con lugar la moción del demandado Cautiño Bruno sobre desestimación de las causas de acción segunda, tercera y cuarta de la demanda y (2) al declarar con lugar la moción de los demandados para que se dictara sentencia desestimando la demanda en cuanto a las referidas causas de acción, por no aducir las mismas hechos constitutivos de causa de acción.

Al discutir los anteriores errores sostiene la demandante que debemos revocar el caso de *Correa* v. *Sucn. Pizá,* 64 D.P.R. 987, así como los de *Cruz* v. *Andrini,* 66 D.P.R. 124, y *Fernández* v. *Sucn. Fernández,* 66 D.P.R. 881, que siguieron a éste. Arguye, además, que no es cierto que la Ley núm. 229 de 12 de mayo de 1942 (pág. 1297) se aprobara a la luz de nuestro Código Civil, especialmente del artículo 125 del mismo, y que la discusión en la sala de sesiones del Senado entre los senadores Géigel Polanco e Iriarte no giró en torno del P. de la C. núm. 242,—el que al ser más tarde presentado en forma de proyecto sustituto en el Senado se convirtió en la Ley 229 de 1942—sino en torno del P. del S. núm. 340, que nunca fué aprobado por las cámaras legislativas.

██ La sección 2 de la Ley 229, supra, según fué enmendada por la núm. 243 de 12 de mayo de 1945 (pág. 815) dispone:

"Sección 2.—Los hijos nacidos fuera de matrimonio con anterioridad a la fecha de vigencia de esta Ley y que no tenían la condición de hijos naturales según la legislación anterior, podrán ser reconocidos por acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, a todos los efectos legales. Estos hijos quedarán legitimados por el subsiguiente matrimonio de sus padres entre sí.

"En caso de que los hijos a que se refiere esta sección no fueren reconocidos por la acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, dichos hijos se considerarán hijos naturales al solo efecto de llevar el apellido de sus padres. La acción para este reconocimiento se tramitará de acuerdo con el procedimiento que fija el Código Civil de Puerto Rico para el reconocimiento de hijos naturales; *Entendiéndose, sin embargo*, que tal reconocimiento sólo tendrá el alcance que aquí se expresa."

Surge de los autos que cuando nació la demandante su presunto padre era casado con la codemandada Monserrate Bruno Domínguez. En su consecuencia, para la época de su nacimiento y bajo la ley entonces vigente ella era una hija ilegítima, sin derecho a solicitar su reconocimiento.[1] La sección antes citada permite, sin embargo, que los hijos nacidos fuera de matrimonio con anterioridad a su vigencia, que no tenían la condición de hijos naturales bajo la legislación anterior, sean reconocidos por acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, a todos los efectos legales. También autoriza que al no haber tal reconocimiento por acción voluntaria del padre o de sus herederos, el hijo natural inste demanda sobre reconocimiento al solo efecto de llevar el apellido de su progenitor.

En *Correa* v. *Sucn. Pizá,* supra, resolvimos que la *acción voluntaria* del padre a que se refiere la sección 2 de la Ley 229 de 1942 exige el reconocimiento por parte de éste en el acta de nacimiento o el otorgamiento por el presunto

---

[1] Véanse los artículos 112, 119 y 125 del Código Civil, edición de 1930.

padre de un testamento o de cualquier otro documento público en que expresamente reconozca al hijo. El repetido y detenido estudio que hemos hecho del alegato de la apelante, de los razonamientos en él expuestos, de las citas aducidas y del proceso legislativo que culminó en la aprobación del proyecto que al ser suscrito por el Gobernador de Puerto Rico lleva el núm. 229 de las leyes de 1942, no nos convence de que debemos cambiar de criterio sobre la materia y, por ende, revocar lo resuelto por nosotros en dicho caso y en los que le siguieron. Es cierto que el debate habido entre los senadores Géigel Polanco e Iriarte giró en torno del P. del S. 340 y no alrededor del sustituto del Senado al P. de la C. 242, que finalmente se convirtió en la Ley núm. 229 de 1942.(²) Empero, nada hallamos en ese debate que nos indique que algún miembro de la Asamblea Legislativa creyera que cualquiera de dichos proyectos tuviera por miras un resultado distinto al que llegamos en el caso de Pizá. Sea ello como fuere, las leyes han de ser interpretadas a base de lo que la Asamblea Legislativa hizo y no a base de lo que ésta dejó de hacer, ni de la actuación personal de uno de sus miembros. 70 A.L.R. 26, 28; *People* v. *Marxhausen*, 171

---

(²) Manifiesta la apelante en su alegato que la contención del Senador Iriarte en dicho debate fué que el P. del S. 340 debía enmendarse en tal forma que su operación resultara retroactiva a la par que prospectiva y que sus disposiciones beneficiaran por igual a los hijos adulterinos nacidos antes que empezara a regir la proyectada legislación como a los hijos adulterinos nacidos después de su vigencia; y que luego de ese debate alrededor del P. del S. 340 el Senado consideró el P. de la C. 242 y entonces el Senador Iriarte no levantó objeción alguna y votó a favor tanto del P. de la C. 242 enmendado como a favor de su sustituto que más tarde se convirtió en la Ley 229 de 1942. Continúa manifestando la apelante que "La conclusión salta a la vista: si la única objeción del Senador Iriarte al P. del S. 340 era que sólo operaba prospectivamente, cuando votó a favor del P. de la C. 242 enmendado y de su sustituto, ello fué porque el P. de la C. 242 tenía efecto retroactivo." Llega entonces a la conclusión de que la intención legislativa fué liberalizar la legislación anterior en cuanto a los hijos nacidos fuera de matrimonio y de que la acción voluntaria de que habla el párrafo 2 del artículo 125 es idéntica a la acción voluntaria de que hablan los incisos primero, segundo y cuarto del párrafo segundo de dicho artículo, excepto que tienen distinta forma de expresión.

N. W. 557, 3 A.L.R. 1505; *Reed* v. *Huston,* 132 Pac. 109; Ann. Cas. 1915A, 1237; 50 Am. Jur. 318, sec. 326. Nuestro criterio continúa siendo que la Ley 229, según ha sido enmendada, opera con carácter prospectivo únicamente y que si bien las personas nacidas con anterioridad a su vigencia, que de acuerdo con la legislación anterior no gozaban del concepto de hijos naturales, pueden bajo la ley actual ser reconocidas por acción voluntaria y disfrutar en su virtud de todos los derechos conferidos por la ley a los hijos naturales legalmente reconocidos, sin embargo, tal reconocimiento por acción voluntaria deberá fundarse en el párrafo segundo del artículo 125 del Código Civil, ed. de 1930, que requiere un reconocimiento en el acta de nacimiento, en testamento o en cualquier otro documento público. La posesión continua del estado de hijo natural del padre demandado, anterior o posterior a la vigencia de la Ley 229 de 1942, por disposición expresa de dicho artículo sólo puede servir de base a una acción judicial para el reconocimiento forzoso del hijo por el presunto padre o por sus herederos, mas en un caso como el presente al sólo efecto, desde luego, de llevar aquél el apellido de éste. El reconocimiento mediante actuación judicial, no es, en su consecuencia, el reconocimiento por acción voluntaria a que se refiere la sección 2 de la Ley 229.

No era nuevo en esta jurisdicción el principio enunciado en *Correa* v. *Sucn. Pizá,* supra, al efecto de que bajo el artículo 125 del Código Civil, ed. de 1930, se confiere *status* como hijo natural (1) *voluntariamente* por el padre sólo mediante instrumento público; o (2) *involuntariamente* mediante procedimiento judicial que *obligue* al padre putativo a reconocerlo. Desde el año 1910 manifestamos en *Amsterdam* v. *Puente,* 16 D.P.R. 554, 561, lo siguiente:

"Se admite que ha habido siempre dos clases de reconocimiento: *uno voluntario y el otro obligatorio.* La distinción entre estas dos clases de reconocimiento ha quedado definida en el caso de Gual,(³)

---

(³)*Gual* v. *Bonafoux,* 15 D.P.R. 559, 566.

cuando se habla en él de los derechos consecuentes a un reconocimiento auténtico y solemne de la filiación natural. . . . . .''

''* * * * * * *

''Creemos que de las disposiciones del Código Civil vigentes anteriormente, así como de la práctica y jurisprudencia sobre el particular, puede correctamente deducirse la conclusión de que *sin algún acto que en forma auténtica revele la voluntad del padre, de dar a su hijo tal estado, el hijo tiene solamente un derecho de acción para obligar al padre a que le confiera dicho estado.* El artículo 135 del Código Civil Español, y el 189 del Código Civil de Puerto Rico, proveen los casos en que un padre puede ser *obligado* a reconocer a su hijo ilegítimo. Solamente puede ser *obligado* a ello por medio de una acción, y *puede decirse que tal acción sería innecesaria, únicamente en aquellos casos en que hubieran actos solemnes por parte del padre, que vengan a demostrar que tal obligación ha sido cumplida.* Claramente se deduce de estos artículos, que aunque un padre haya ejecutado, como sucede en el caso de autos, una serie de actos tendentes a mostrar que determinada persona era hijo suyo, sin embargo, no puede decirse que él la haya reconocido, dentro de la acepción que legalmente tiene la palabra 'reconocimiento.' *Si él puede ser obligado a ello, entonces hay que convenir en que antes de obligársele, el desideratum no se ha logrado.* Bajo tales circunstancias, y hasta que no haya algún acto solemne, o alguna declaración de parte de un tribunal, no puede decirse que el hijo ha sido reconocido, ni puede afirmarse que haya adquirido el estado civil de hijo natural reconocido.'' (Bastardillas nuestras.)

Véanse también *Puente* v. *Puente,* 16 D.P.R. 582, 585; *Matienzo* v. *Morales,* 16 D.P.R. 588; *Rijos* v. *Folgueras,* 16 D.P.R. 624, 629; *Calaf* v. *Calaf,* 17 D.P.R. 198, 210; *Rivera* v. *Cámara,* 17 D.P.R. 528 (revocado por otros fundamentos en *Sampedro* v. *Fournier,* 69 D.P.R. 584); *Peñagarícano* v. *Peñagarícano,* 19 D.P.R. 494, 497; *Figueroa* v. *Díaz,* 19 D.P.R. 717, 725; *González* v. *López,* 19 D.P.R. 1113, 1117; *Figueroa* v. *Díaz,* 20 D.P.R. 284, 287; *López* v. *López,* 23 D.P.R. 824, 827. No puede atribuirse al legislador desconocimiento de la interpretación que a través de los años y en una serie ininterrumpida de casos habíamos dado al artículo 125 del Código Civil, ni el propósito de derogar éste implícitamente.

Al aprobar la Ley 229 de 1942 lo hizo a la luz de la inter-pretación dada a ese artículo.

La demandante admitió en la estipulación hecha en corte abierta que ella no ha sido reconocida en el acta de naci-miento, por testamento ni en ningún otro documento público. No ha habido, por tanto, un reconocimiento por acción volun-taria. En su virtud, las causas de acción segunda, tercera y cuarta de su demanda caen por su base.

Cuanto acabamos de decir y cuanto dijimos en el caso de *Correa* v. *Pizá,* supra, con respecto al reconocimiento por acción voluntaria por parte de un presunto padre, es aplica-ble *mutatis mutandis* al reconocimiento por acción voluntaria de los herederos del mismo. No cometió la corte inferior los errores señalados.

*Debe confirmarse la sentencia apelada.*

Opinión disidente del Juez Asociado Sr. Negrón Fer-nández.

La trascendencia social de la cuestión que vuelve ante nos con relación a la interpretación y alcance de la sección 2 de la Ley núm. 229, aprobada el 12 de mayo de 1942, en su expresión "podrán ser reconocidos por acción voluntaria" al referirse a los hijos nacidos fuera de matrimonio antes de la vigencia de dicha ley, me mueven a consignar los fun-damentos de mi disenso en este caso.

La referida sección 2, al aprobarse la citada Ley 229, leía:

"Los hijos nacidos fuera de matrimonio con anterioridad a la fecha de vigencia de esta Ley y que no tenían la condición de hijos naturales según la legislación anterior, podrán ser reconocidos *por acción voluntaria* de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, a todos los efectos legales. Estos hijos quedarán legitimados por el subsiguiente matrimonio de sus padres entre sí." (Bastardillas nuestras.)

El 12 de mayo de 1945, se adicionó a la misma, por la Ley 243 de esa fecha, (Leyes de 1945, pág. 815), el siguiente párrafo:

" 'En caso de que los hijos a que se refiere esta sección no fueren reconocidos por la acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, dichos hijos se considerarán hijos naturales al solo efecto de llevar el apellido de sus padres. La acción para este reconocimiento se tramitará de acuerdo con el procedimiento que fija el Código Civil de Puerto Rico para el reconocimiento de hijos naturales; *Entendiéndose, sin embargo*, que tal reconocimiento sólo tendrá el alcance que aquí se expresa.' "

En el caso de *Correa* v. *Sucn. Pizá,* 64 D.P.R. 987, este Tribunal resolvió, el 9 de mayo de 1945, que la *acción voluntaria* a que se refiere la sección 2 de la mencionada ley, leída a la luz del artículo 125 del Código Civil (ed. 1930), exige el reconocimiento en acta de nacimiento, testamento o cualquier otro documento público. Así se expresó este Tribunal:

"Cuando la sección 2 es leída a la luz del artículo 125 del Código, es obvio que las actuaciones y manifestaciones del padre admitiendo la paternidad contenidas en la demanda, no son la 'acción voluntaria' que contempla la sección 2. Acción voluntaria, según se indica en el artículo 125, significa el otorgamiento por el padre de un acta de nacimiento, escritura o cualquier otro documento público. Las alegaciones de la demanda muy bien pudieron dar derecho a la demandante bajo el artículo 125 a obligar al padre a reconocerla *involuntariamente* como hija natural a tenor con una orden judicial a ese efecto, de no haber sido una hija adulterina. Pero la sección 2 de la Ley núm. 229, al disponer el posible reconocimiento de los hijos adulterinos que, como la demandante, nacieron antes de mayo de 1942, lo limita al reconocimiento voluntario solamente, *dentro del significado de dicha frase en el artículo 125* (Actas del Senado, supra; Muñoz Morales, supra). Esto exige una inscripción, un testamento o cualquier otro documento público otorgado por el padre. Y eso no ocurrió aquí." (Bastardillas nuestras.)

Creo que la doctrina sentada en *Correa* v. *Sucn. Pizá,* supra, y seguida en los de *Cruz* v. *Andrini,* 66 D.P.R. 124 y *Fernández* v. *Sucn. Fernández,* 66 D.P.R. 881, debe ser revocada y una nueva interpretación y alcance dados a la expresión *por acción voluntaria,* en el sentido de que bajo los incisos 1 y 2 del párrafo 3ro. del artículo 125 del Código

Civil, ed. 1930,([1]) que establecen, respectivamente, que el padre está obligado a reconocer al hijo natural (1) cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad y (2) cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos del mismo padre o de su familia, el reconocimiento declarado en pleito instado por el hijo a ese fin, lo es por *acción voluntaria,* dentro del alcance y propósito de la sección 2 ya mencionada.

Con la decisión en el caso de *Correa* v. *Sucn. Pizá,* este Tribunal dió una interpretación restrictiva a la Ley 229. Al resolver que la expresión *acción voluntaria* significa el otorgamiento por el padre de un acta de nacimiento, escritura o cualquier otro documento público, según lo provisto en el párrafo 2 del artículo 125 del Código Civil, incluyó en la sección 2 de la Ley 229 una limitación en ella no contenida. Al así hacerlo, perdió de vista el hecho innegable y cierto de que bajo los dos primeros incisos del párrafo tercero del mismo artículo 125,—escrito indubitado y posesión de estado— los actos del padre, para dar derecho al hijo natural a instar la acción judicial para su reconocimiento, tienen que ser, y de hecho y en derecho son, tan voluntarios y espontáneos como los del reconocimiento que, bajo el párrafo segundo de dicho artículo, puede hacer el padre en el acta de nacimiento o en documento público.

La frase *reconocimiento voluntario* no está contenida en el artículo 125. Se le ha dado tal calificativo al reconoci-

([1]) El párrafo tercero del artículo 125 del Código Civil, (ed. 1930) equivalente en parte al 135 del Código Civil Español, dispone: ''El padre está obligado a reconocer al hijo natural:

''1. Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

''2. Cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos del mismo padre o de su familia.

''3. Cuando la madre fué conocida viviendo en concubinato con el padre durante el embarazo y al tiempo del nacimiento del hijo.

''4. Cuando el hijo pueda presentar cualquier prueba auténtica de su paternidad.''

miento en acta de nacimiento o documento público, porque en el segundo párrafo del mismo se provee que "El hijo natural *puede ser reconocido* por el padre o la madre conjuntamente, o por uno solo de ellos, en el acta de nacimiento, o en otro documento público." (Bastardillas nuestras.)

El calificativo de *forzoso,* ha sido dado al reconocimiento en los casos de *escrito indubitado* y *posesión de estado,* porque en el tercer párrafo de dicho artículo se provee que "El padre *está obligado a reconocer* al hijo natural: (1) Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad; (2) Cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos del mismo padre o de su familia; (3) Cuando la madre fué conocida viviendo en concubinato con el padre durante el embarazo y al tiempo del nacimiento del hijo; (4) Cuando el hijo pueda presentar cualquier prueba auténtica de su paternidad." (Bastardillas nuestras.) Sin embargo, el término *reconocimiento forzoso* no es expresión cabal para calificar los actos jurídicos generadores del reconocimiento voluntario y espontáneo dado por el padre previamente al hijo a través de escrito indubitado y de posesión de estado, reconocimientos que si bien carecen del elemento de solemnidad que caracteriza el reconocimiento expreso en el acta de nacimiento o en documento público, constituyen actos tan voluntarios y espontáneos como éstos, que tan sólo requieren su ratificación por declaración judicial. El reconocimiento en acta de nacimiento o documento público, además de voluntario, es solemne; el reconocimiento en escrito indubitado del padre en que expresamente reconozca la paternidad del hijo, y la posesión continua del estado de hijo natural, justificada por actos del padre o de su familia, son reconocimientos por acción voluntaria, aunque carezcan del requisito de solemnidad.

En los casos en que el reconocimiento es en el acta de nacimiento o por documento público, no se necesita ulterior determinación para que surta efectos inmediatos; el recono-

cimiento por escrito indubitado del padre y por posesión continua del estado de hijo natural, requieren confirmación ante los tribunales, mas no por esa exigencia pierden el carácter de reconocimientos voluntarios. Comentaristas del Código Civil Español como Manresa y Scaevola, estudiando el artículo 135 del Código Civil Español, equivalente en parte al 125 nuestro, están contestes en que los casos de reconocimiento por escrito indubitado del padre y por posesión continua del estado de hijo natural no conllevan la investigación de la paternidad por cuanto no se impone por ellos al padre más que la ratificación *de su reconocimiento anterior*.

Manresa en sus Comentarios al Código Civil Español, Vol. I, págs. 600-1, se expresa así:

"Los redactores del Código, según hemos dicho, han debido someterse a la Ley de Bases, y por lo tanto, *han rechazado la libre investigación de la paternidad*. Los casos de reconocimiento forzoso que en los números 1º. y 2º. de este artículo se expresan, *no la comprenden, porque en suma no se impone en ellos al padre más que la ratificación de su reconocimiento anterior,* expresado en un documento privado o en los actos que constituyen la posesión de estado de hijo natural: viniendo en último término *a ser mera ampliación del artículo 131, en que se establecen las formas de reconocimiento.* A las allí admitidas hay que añadir ahora el documento privado y los actos de la vida familiar que implican aquel mismo hecho. Por lo tanto, *el artículo no se aparta de la Ley de Bases, ni de la tradición de nuestro derecho en la cual el reconocimiento del padre debía ser espontáneo, libre y legalmente hecho y probado.* Todos estos requisitos se encuentran en el *hecho* real *del reconocimiento anterior, que los hijos no tienen más que presentar para que su autenticidad se confirme ante los tribunales.*" (Bastardillas nuestras, excepto la palabra "hecho".)

Y Scaevola, Código Civil, Vol. III, págs. 181-2, se expresa en los siguientes términos:

"El Código español, inspirándose en los antecedentes nacionales, no prohibe expresamente la investigación de la paternidad, pero tampoco la autoriza, puesto que lo que hace *es permitir la declaración judicial de la misma, cuando consta ya extrajudicialmente, como se desprende de los casos primeros y segundo del artículo.*

"Es el primero, el de que exista escrito indubitado del padre en que expresamente reconozca su paternidad, y a la verdad que no se concibe tal precepto sino teniendo en cuenta la prevención y el recelo con que han mirado los legisladores de todos los países cuanto se refería a los hijos naturales. Cuando el padre ha reconocido al hijo, no de una manera tácita, sino expresa, y no por virtud de un escrito cualquiera, sino de uno indubitado, es decir, de los que no dan lugar a duda ninguna, ¿por qué obligar al hijo a seguir un pleito para obtener lo que ya es cierto e indudable? Resulta el precepto del artículo más gravoso y desfavorable para el hijo en el caso en que existiendo el padre o quien le represente, de conformidad con lo dispuesto en el núm. 1º. del artículo 137, tenga que dirigir su acción contra los herederos del presunto padre. ¿Por qué el hijo se ha de ver precisado a entablar un litigio contra ellos *a fin de conseguir lo que con anterioridad estaba ya demostrado? ¿Por qué este doble reconocimiento, es decir, el forzoso, después del voluntario?*

"Análogas objeciones merece el caso segundo. ¿Por qué el hijo ha de probar la paternidad cuando ésta consta por actos directos del padre o de su familia? ¿Por qué una nueva justificación de su filiación natural si el hijo—y de este supuesto parte el Código—*se halla disfrutando de la posesión continua de tal estado civil? ¿Qué reconocimiento más expreso se quiere que la conducta del principal y directamente interesado?* Permitir la investigación de la paternidad, como hace el Código en los dos primeros casos de este artículo, cuando ésta se halla demostrada, equivale a negar indirectamente tal derecho, puesto que en ambos el reconocimiento queda al capricho y a la voluntad del padre. Quien deja un escrito afirmando la paternidad de un hijo natural o tiene a éste en su casa alimentándole y educándole, indica que no es un malvado, y puede asegurarse que tarde o temprano reconocería al hijo de alguno de los modos determinados en el artículo 131. No es, por tanto, respecto de estos padres contra los que hay que permitir la investigación, sino contra aquellos otros que ostentando tal carácter por su conducta viciosa o acaso criminal, hayan omitido conscientemente el incurrir en alguno de los dos números del artículo." (Bastardillas nuestras.)

El término *reconocimiento forzoso* usado para denotar el carácter del reconocimiento en los casos en que existe escrito indubitado del padre o posesión de estado es, en mi concepto, sólo una rúbrica que no expresa a cabalidad la verdadera naturaleza y carácter del reconocimiento previo que tales actos,

voluntaria y espontáneamente realizados, conllevan. La rúbrica, sin embargo, no puede afectar—más bien exige como condición para que quede solemnizado y confirmado por el tribunal—el carácter voluntario de los actos de que dimana el reconocimiento. Por eso, la interrogación de Scaevola de "¿por qué este doble reconocimiento, es decir, el forzoso después del voluntario?"

·El Tribunal Supremo de España en Sentencia de 26 de junio de 1903, 95 Jurisprudencia Civil 1021, establece, al igual que en sus Comentarios lo hacen Manresa y Scaevola, que la posesión de estado a que se refiere el número 2 del artículo 135 del Código Civil Español consiste "en el concepto público en que es tenido un hijo con relación a su padre natural, cuando este concepto se forma por actos directos del mismo padre o de su familia, *demostrativos de un verdadero reconocimiento perfectamente voluntario, libre y espontáneo,* puesto que el referido cuerpo legal no autoriza la pesquisa de la paternidad, salvo lo dispuesto en el Código Penal, *ni impone consiguientemente tal reconocimiento contra la voluntad del padre* sin que aparte de esto sea preciso se haga tan ostentosamente como si fuera un hijo legítimo, habida cuenta de las ideas y consideraciones que puedan existir en las relaciones sociales; quedando, por lo tanto, la misión de los Tribunales, dentro de esta doctrina, reducida a apreciar en cada caso la índole, trascendencia y alcance de los actos de reconocimiento atribuídos al padre natural o a su familia." (Bastardillas nuestras.)

Igual pronunciamiento había hecho en Sentencias de 21 de mayo de 1896, 79 Jurisprudencia Civil 1045; de 7 de noviembre de 1896, 80 Jurisprudencia Civil 503; de 31 de diciembre de 1902, en que declaró que "el Código Civil *no establece los derechos* de los hijos naturales, con relación al padre, sobre la base *de la investigación y prueba de la paternidad,* sino sólo sobre *la de reconocimiento* de aquéllos, ya cuando se hace éste en la forma determinada en el número 1 del artículo 135, ya porque así se derive de la posesión

continua de tal estado'', y que ''para estimar *la eficacia* del reconocimiento, exige la ley actos directos *emanados de la voluntad* de aquél a quien se atribuye la paternidad.'' (Bastardillas nuestras.) 94 Jurisprudencia Civil 810; y de 26 de marzo de 1904, 97 Jurisprudencia Civil 695.

Este concepto fué ratificado por Sentencias de 26 de marzo de 1904, 97 Jurisprudencia Civil 695; 5 de julio de 1906, 105 Jurisprudencia Civil 58; 16 de octubre de 1906, 105 Jurisprudencia Civil 382; y de 12 de octubre de 1907, 108 Jurisprudencia Civil 558, en que resolvió dicho Tribunal que:

''. . . los derechos de los hijos naturales con relación al padre deben establecerse, no sobre la presunción o la prueba de la paternidad cuya investigación no autoriza la ley, sino sobre la base del reconocimiento ya expreso, ya derivado de la posesión continua a que se refiere el caso 2º. del artículo 135 del Código Civil:

''. . . esta posesión de estado, consistente en el concepto público en que es tenido un hijo con respecto a su padre natural, ha de revelarse necesariamente, según doctrina del Tribunal Supremo, por actos directos que demuestren con evidencia *la voluntad libre y espontánea* del padre, o de su familia en su caso, de tener como hijo natural al que pretenda su reconocimiento y acrediten cumplidamente la continuidad de la posesión, o sea que el hijo mantiene con aquél, y como tal hijo, relaciones constantes y no interrumpidas, no siendo legal confundir actos que puedan revelar más o menos la presunción o convencimiento en que una persona esté de su paternidad con relación a hijos naturales, con los que demuestren su propósito de poner a estos hijos en la posesión de tal estado:

''. . . los actos atribuídos al padre deben calificarse según las circunstancias de cada caso, para definir sobre la base de los mismos la posesión continua del estado de hijo natural.'' (Bastardillas nuestras.)

Véase igualmente la sentencia de 26 de mayo de 1920, 150 Jurisprudencia Civil 404.

El caso de *Correa* v. *Sucn. Pizá,* supra, excluye del término ''acción voluntaria'' usado en la sección 2 de la citada Ley 229, el reconocimiento por acción judicial, aunque ésta necesariamente dependa y esté fundada en actos previos de

reconocimiento voluntario del padre. Hemos visto cómo los comentaristas, al referirse al llamado *reconocimiento forzoso* ven, en la entraña misma de los actos generadores del derecho al reconocimiento por parte del hijo natural, el reconocimiento voluntario, al que sólo falta el requisito de solemnidad. Y cómo el Tribunal Supremo de España, al definir el alcance de las acciones fundadas en escrito indubitado y posesión de estado, igualmente predica el ejercicio de tales acciones en los actos voluntarios y espontáneos de reconocimiento previo por parte del padre. La jurisprudencia de este Tribunal sentada con anterioridad a la aprobación a la Ley 229 ya citada,([2]) en el sentido de que los actos de reconocimiento por escrito indubitado y posesión de estado, que carecen del requisito de solemnidad y autenticidad, no tienen su *desideratum* hasta que no media sentencia firme en pleito instado a ese fin; de que no basta la posesión continua del estado de hijo natural para entrar desde luego en el goce y disfrute de los derechos consiguientes al reconocimiento auténtico y fehaciente de la filiación natural; de que sin algún acto que en forma auténtica revele la voluntad del padre de dar a su hijo tal estado, el hijo tiene solamente un derecho de acción para obligar al padre a que le confiera tal estado, no milita en contra de la teoría que sustento en cuanto al alcance de la expresión ''acción voluntaria'' usada en la referida ley.

Hago esta afirmación porque ninguna de las decisiones anteriores a la aprobación de la Ley 229, a pesar de aplicar la rúbrica de *reconocimiento forzoso* a los casos basados en la existencia de escrito indubitado y posesión de estado, niega que en tales casos los reconocimientos estén predicados en

---

([2])*Amsterdam et al.* v. *Puente et al.*, 16 D.P.R. 554 (citando a *Gual et al.* v. *Bonafoux et al.*, 15 D.P.R. 559); *Puente et al.* v. *Puente et al.*, 16 D.P.R. 582; *Matienzo* v. *Morales et al.*, 16 D.P.R. 588; *Rijos* v. *Folgueras et al.*, 16 D.P.R. 624; *Calaf et al.* v. *Calaf*, 17 D.P.R. 198; *Rivera* v. *Cámara*, 17 D.P.R. 528; *Peñagaricano* v. *Peñagaricano et al.*, 19 D.P.R. 494; *Figueroa* v. *Díaz et al.*, 19 D.P.R. 717 y 20 D.P.R. 284; *González et al.* v. *López et al.*, 19 D.P.R. 1113 y *López* v. *López et al.*, 23 D.P.R. 824.

actos previos, voluntarios y espontáneos, circunstancias indispensables para el ejercicio de la acción, según sostienen los Comentaristas del Código Civil Español y el Tribunal Supremo de España. Si ello es así, ¿cómo restringir la expresión "por acción voluntaria" contenida en la sección 2 de la Ley 229 al reconocimiento en acta de nacimiento o documento público, cuando la acción del padre, o su familia, es y tiene que ser tan voluntaria y espontánea en los casos de escrito indubitado y posesión de estado como en los antes mencionados?

La falta de solemnidad de que adolece el reconocimiento por escrito indubitado y posesión de estado no afecta, y en nada perjudica, el carácter voluntario y espontáneo de los actos previos de reconocimiento, que luego, en juicio declarativo, ratifica el tribunal. Con tal ratificación se suple únicamente la falta de solemnidad de dichos actos; mas no el carácter voluntario y espontáneo de los mismos, que es condición indispensable para dicha ratificación. En ausencia de indicación alguna en la sección 2 de la Ley 229 de restringir el alcance del término "acción voluntaria" usado en la misma para indicar los casos en que los hijos nacidos con anterioridad a la fecha de su vigencia, y que no tenían la condición de hijos naturales según la legislación anterior, pueden ser reconocidos por sus padres—o por las personas con derecho a la herencia—dicha ley debe interpretarse en forma liberal, no restrictiva; no a la luz de la rúbrica dada a las *formas* de reconocimiento contenidas en el artículo 125 del Código Civil, si que más bien a la luz de la condición voluntaria de los actos previos, determinantes del reconocimiento y generadores del derecho a que éste se declare, según los comentaristas y la jurisprudencia del Tribunal Supremo de España, que, por tan citados en el estudio de nuestro Código Civil, han venido a formar parte, por adopción, de nuestro sistema jurisprudencial; y si en nuestras decisiones ante-

riores no se penetró en el fondo de la condición "voluntaria" de los actos previos de reconocimiento que contemplan los incisos 1 y 2 del tercer párrafo del artículo 125, se impone, al interpretar una ley de tanta trascendencia social como la 229, que vayamos a la raíz del artículo 125 del Código Civil para medir, en toda la extensión de la justicia social que persigue, la acción legislativa aprobando la Ley 229. "La jurisprudencia no puede permanecer extraña a las funciones del derecho público y a las inspiraciones del medio social" —Sentencia del Tribunal Supremo de España de 21 de noviembre de 1934, 216 Jurisprudencia Civil 91—en la cual, enfocando el momento histórico de España a raíz de su constitución en república el 9 de diciembre de 1931 en relación con la función judicial en la interpretación de la legislación relativa a la filiación, dijo dicho tribunal:

"Considerando que, aun sin acoger todas las conclusiones propugnadas por los partidarios del llamado método histórico—evolutivo de interpretación de las normas jurídicas, puede admitirse hoy, como doctrina ponderada y de muy general aceptación, la de que no bastan para realizar cumplidamente la función interpretativa, los elementos gramaticales y lógicos, pues si la ley ha de estar en contacto con las exigencias de la vida real, que constituyen su razón de ser, es preciso que los resultados que se obtengan merced a esos dos elementos clásicos, sean reforzados y controlados por la aplicación del que suele llamarse elemento sociológico, integrado por aquella serie de factores—ideológicos, morales y económicos—que revelan y plasman las necesidades y el espíritu de la comunidad en cada momento histórico; y si bien es cierto que estos factores, aparte de que no pueden nunca autorizar al intérprete para modificar o inaplicar la norma y sí sólo para suavizarla hasta donde permita el contenido del texto que entra en juego, requieren en su utilización mucho tino y prudencia, porque envuelve grave riesgo de arbitrariedad al entregar al criterio subjetivo del juez apreciaciones tan delicadas como la de la conciencia moral de un pueblo, se ha de reconocer que su aplicación se hace más segura y decisiva cuando se trata, no de estados de conciencia todavía nebulosos o en vías de formación, sino de tendencias o ideas que han penetrado ya en el sistema de la legislación positiva, o han obtenido su reconocimiento, de manera inequívoca, en la ley suprema del Estado."

La acción judicial que tanto bajo el primer inciso del párrafo 3 del artículo 125 de nuestro Código Civil referente al escrito indubitado del padre que expresamente reconozca la paternidad, así como bajo el segundo inciso de dicho tercer párrafo, referente a la posesión de estado, no va dirigida a investigar la paternidad y sí meramente a obtener una declaración judicial sobre el reconocimiento previo, espontáneo y voluntario, que por no tener la solemnidad del reconocimiento en acta de nacimiento o documento público, hace necesaria tal declaración. En tal sentido, dichos incisos 1 y 2 del artículo 125 se distinguen de los 3 y 4 que le siguen, que respectivamente imponen al padre la obligación de reconocer al hijo ''cuando la madre fué conocida viviendo en concubinato con el padre durante el embarazo y al tiempo del nacimiento del hijo'' y ''cuando el hijo pueda presentar cualquier prueba auténtica de su paternidad'', en que éstos no requieren los actos previos *voluntarios* y *espontáneos* del padre, que son característicos del escrito indubitado y la posesión de estado bajo los incisos 1 y 2. En consecuencia, al reconocimiento impuesto al padre bajo los incisos 3 y 4 referidos sí puede aplicársele la rúbrica de *reconocimiento forzoso,* pues éste viene luego de una investigación judicial de la paternidad, cosa que no ocurre bajo los incisos 1 y 2.

La enmienda mediante adición introducida a la sección 2 de la Ley núm. 229 que nos ocupa, por la núm. 243 de 12 de mayo de 1945, en el sentido de que los hijos a que se refiere dicha sección, que no fueren reconocidos por la acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, se considerarán hijos naturales *al solo efecto de llevar el apellido de sus padres,* y que la acción para tal reconocimiento se tramitará de acuerdo con el procedimiento que fija el Código Civil para el reconocimiento de hijos naturales, tiene, a mi juicio, aplicación en aquellos casos comprendidos en los incisos 3 y 4

del artículo 125, que son los verdaderos casos de reconocimiento forzoso, y no a los de los incisos 1 y 2 ya mencionados. El hecho de que dicha enmienda, por adición, fuera aprobada el 12 de mayo de 1945, o sea, 3 días después de la decisión del caso de *Correa* v. *Sucn. Pizá,* no indica que la Legislatura aprobara dicha enmienda a la luz de la referida decisión, como parece sugerirse en el caso de *Cruz* v. *Andrini,* supra.

La fecha de aprobación de la citada enmienda según aparece en las leyes impresas del año 1945, páginas 815 y 816, no se refiere a la aprobación por la Legislatura y sí a la aprobación por el poder ejecutivo, que es cuando los proyectos se convierten en ley. La referida enmienda fué aprobada en la Legislatura ordinaria de 1945, que terminó sus sesiones el 15 de abril, y no con posterioridad al 9 de mayo. La intención legislativa, al aprobar el proyecto, no puede deducirse, por lo tanto, de las implicaciones del caso de *Correa,* ni el alcance de dicha enmienda tampoco aplicarse a los casos de reconocimiento basados en escrito indubitado y posesión de estado.

Por los fundamentos expuestos, habiendo sido desestimadas por la corte inferior las tres causas de acción predicadas en el reconocimiento de la demandante por acción voluntaria del causante a través de actos suyos hasta su fallecimiento el 1ro. de mayo de 1946, así como por actos de sus herederos—porque según estipulación entre las partes el alegado reconocimiento no constaba en acta de nacimiento, ni en testamento, ni en ningún otro documento público—soy de opinión que la sentencia apelada debería ser revocada y devuelto el caso a la corte inferior para que se vea en su fondo el juicio declarativo que inició la demandante con el fin de dar solemnidad al reconocimiento previo que alega haber recibido por acción voluntaria del causante y sus herederos.