CLARIBEL VARGAS, menor de edad, representada por su madre con patria potestad, MERCEDES VARGAS, demandante y apelada, *v.* PEDRO JUSINO, demandado y apelante.

Núm. 9935.—*Sometido:* Mayo 1, 1950. *Resuelto:* Mayo 12, 1950.

---

Víctor Rivera Colón, abogado del apelante; Santiago Polanco Abréu, abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Dos causas de acción ejercita la demandante en su demanda, siendo la primera la de filiación, fundada ésta en el concubinato de sus padres [1] y en hallarse la menor en la posesión continua del estado de hija natural del demandado, y la segunda, la de alimentos. Luego de suscitarse y resolverse cierta cuestión preliminar de derecho y de radicarse una contestación en que se negaban las alegaciones esenciales de la demanda, fué el pleito a juicio, ofreciendo una y otra parte amplia prueba testifical. Como resultado de la misma, la corte dictó sentencia declarando a la menor demandante hija natural reconocida del demandado Pedro Jusino, con los derechos establecidos en ley, y condenando a éste a pasar a la demandante $20 mensuales para sus alimentos, a partir de la presentación de la demanda, y a pagar la suma de $200 por concepto de honorarios de abogado.

En apelación el demandado sostiene "que la prueba presentada por la parte demandante no justifica la sentencia dictada, por ser dicha prueba insuficiente y por no amoldarse a las disposiciones legales vigentes."

Según las alegaciones y la prueba, la demandante nació el 18 de noviembre de 1941. Como se admite por ésta

---

[1] La acción de filiación a base del concubinato fué abandonada por la demandante.

que para aquel entonces el demandado estaba casado con una mujer distinta a su señora madre, la demandante no era una hija natural bajo la ley vigente a la fecha de su nacimiento, que es la ley por la cual han de regirse las acciones de filiación. Artículo 125 del Código Civil, edición 1930.([2]) *Morales* v. *Sucn. Cerame,* 30 D.P.R. 843; *Méndez* v. *Martínez,* 21 D.P.R. 252. La acción de filiación en este caso ha de considerarse, en su consecuencia, como una instada de conformidad con lo provisto por la sección 2 de la Ley núm. 229 de 12 de mayo de 1942 (pág. 1297), según fué enmendada por la núm. 243 de 12 de mayo de 1945 (pág. 815), "al solo efecto de llevar el apellido de sus padres."([3]) Dicha sección provee:

"Los hijos nacidos fuera de matrimonio con anterioridad a la fecha de vigencia de esta Ley y que no tenían la condición de hijos naturales según la legislación anterior, podrán ser reconocidos por acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, *a todos los efectos legales.* Estos hijos quedarán legitimados por el subsiguiente matrimonio de sus padres entre sí.

*"En caso de que los hijos a que se refiere esta sección no fueren reconocidos por la acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, dichos hijos se considerarán hijos naturales al solo efecto de llevar el apellido de sus padres.* La acción para este reconocimiento se tramitará de acuerdo con el procedimiento que fija el Código Civil de Puerto Rico para el reconocimiento de hijos naturales; *Entendiéndose, sin embargo,* que tal reconocimiento sólo tendrá el alcance que aquí se expresa." (Bastardillas nuestras.)

■ Esa ley sólo tiene efecto prospectivo y el reconocimiento por ella autorizado, ya fuere voluntario o involun-

---

([2]) El artículo 125, Código Civil, edición 1930, según regía para la fecha del nacimiento de la demandante proveía en su párrafo inicial: "Son hijos naturales los nacidos, fuera de matrimonio, de padres que al tiempo de la concepción de aquéllos hubieran podido casarse, sin dispensa o con ella."

([3]) Véanse *Cruz* v. *Andrini,* 66 D.P.R. 124; *Fernández* v. *Sucn. Fernández,* 66 D.P.R. 881.

tario, ha de ajustarse a lo provisto por el artículo 125, supra. *Elicier* v. *Sucn. Cautiño*, 70 D.P.R. 432; *Correa* v. *Sucn. Pizá*, 64 D.P.R. 987. El legislador no hizo distinción alguna entre la prueba requerida en acciones de filiación ordinarias y la necesaria en acciones de filiación instadas por un hijo al solo efecto de llevar el apellido de su progenitor. No habiéndose hecho tal distinción, debemos presumir que el propósito fué que tanto en una clase de acciones como en la otra la prueba debería ser la misma. ¿Demostró la prueba en este caso que la demandante se hallaba en la posesión continua del estado de hija natural del demandado? A nuestro juicio no. Fué por ende un error de la corte a quo declarar con lugar la primera causa de acción. En el curso de su opinión y sentencia ella hizo constar que en cuanto a la acción de filiación entendía que habían quedado plenamente probados los siguientes hechos:

"1ro. Que el demandado Pedro Jusino sostuvo relaciones sexuales con Mercedes Vargas, madre de la demandante, durante varios años, desde el 1939 en adelante.

"2do. Que el demandado Pedro Jusino proveyó a Mercedes Vargas de albergue al tiempo del embarazo y alumbramiento y después del nacimiento de la demandante, en una habitación alquilada por el propio Jusino en la residencia de Manuel Sánchez y luego en la casa de Teresa Sánchez.

"3ro. Desde la fecha del nacimiento de la demandante y por varios años el demandado ha proporcionado alimentos a la demandante periódicamente por distintas cantidades.

"4to. El demandado compró a Mercedes Vargas, madre de la demandante, una máquina de coser por la suma de $50 para que Mercedes Vargas, con su trabajo, pudiera ganar algún dinero y así contribuir al sostenimiento de la demandante.

"5to. El demandado ha proporcionado alimentos a la demandante."

Ni una sola palabra dijo, sin embargo, respecto a la posesión de estado. En verdad, tal posesión no surge de la prueba. Aun dando crédito tan sólo a la de la demandante, según lo hizo la corte inferior, dicha prueba reveló que la madre de

ésta y el demandado se conocieron allá para el año 1939 y desde entonces sostuvieron relaciones íntimas, más o menos frecuentes, hasta que en febrero 24 de 1941 la madre de la menor quedó encinta, naciendo ésta, como ya se ha dicho, en 18 de noviembre del mismo año; que al nacer la menor, su señora madre envió al demandado un papelito informándole del hecho; que éste entonces le remitió $10 y un racimo de plátanos; que posteriormente el demandado continuó enviándole pequeñas cantidades de dinero y más tarde le compró una máquina de coser para que ella pudiera trabajar y ganar algo; que poco después de nacida la menor el demandado fué a verla "la miró bien, la buscó y examinó"; que el demandado ha visitado a la niña en distintas ocasiones y la ha tratado como padre cariñoso; (⁴) y que una vez frente a la iglesia cogió la niña en los brazos, pero que él no ha salido a pasear con la niña porque ésta "no sale nunca con nadie".

La posesión de estado a que se refiere el Código Civil, consiste en el concepto público en que ha sido tenido el hijo en relación a su padre natural, cuando este concepto se forma por actos directos del mismo padre o de su familia, demostrativos de un verdadero reconocimiento perfectamente voluntario, libre y espontáneo. *Fontanez* v. *Sucn. Buxó*, 36 D.P.R. 227; *Vega* v. *Sucn. Vega*, 32 D.P.R. 595; *Montalvo* v. *Montalvo*, 25 D.P.R. 858. La prueba de esa posesión ha de ser robusta y convincente. *Méndez* v. *Martínez*, supra. En este caso la prueba aducida por la demandante y creída por la corte, según se ha visto, distó mucho de serlo. El mero hecho de que la madre de la demandante y el demandado sostuvieran relaciones sexuales y de que la menor demandante naciera como resultado de éstas, no es de por sí suficiente para justificar la acción de filiación que se ejercita. Eso tan sólo tiende a probar la paternidad.

---

(⁴) Si bien Mercedes Vargas, madre de la menor demandante, declaró que esas caricias habían sido hechas en público y que Arcadio Medina las había presenciado, al ocupar la silla testifical éste se limitó a decir que vió que Jusino en dos ocasiones detuvo su automóvil frente a la casa de Mercedes, entregándole dinero a la menor en la primera ocasión y a la madre de ésta en la segunda.

■ Tampoco constituye prueba suficiente de la posesión de estado de hija natural el hecho de que con posterioridad al nacimiento de la niña el demandado enviara a la madre de la menor dinero para los gastos de ésta, fuera a ver la niña, la acariciara y la cogiera en sus brazos públicamente en una sola ocasión. *Torres* v. *Sucn. Caballero*, 39 D.P.R. 724; *Fontanez* v. *Sucn. Buxó*, supra; *Serrano* v. *Olivero*, 31 D.P.R. 83. Según repetidamente hemos dicho, la mera prueba de la paternidad, aun cuando vaya acompañada de actos de caricias y afectos, regalos, o admisiones de la paternidad, no será bastante para conferir derecho de acción al reconocimiento. *Morales* v. *Sucn. Cerame*, supra. No siendo la prueba presentada de por sí suficiente para la filiación basada en la posesión de estado, la primera causa de acción de la demanda debió, por tanto, ser declarada sin lugar.

■ Ahora bien, aunque la acción de filiación y la de alimentos son acumulables, el hecho de que no se tenga éxito en cuanto a la primera no significa que la acción de alimentos haya también de fracasar. *Pueblo* v. *Rodríguez*, 67 D.P.R. 735, nota (3) a la pág. 737. *Cf. Cerra* v. *Corte*, 67 D.P.R. 929. La prueba creída por la corte a quo demostró que la menor demandante nació dentro del período de gestación como resultado de relaciones habidas entre su señora madre y el demandado. Demostrada la paternidad ella tiene derecho a recibir alimentos. *Rodríguez* v. *Cruz*, 68 D.P.R. 751; *Pueblo* v. *Rodríguez*, supra. La cantidad fijada por la corte inferior está en armonía con la prueba aducida. Por otra parte, el hecho de que no se demostrara que el demandado fuera temerario no le releva del pago de honorarios de abogado, ya que en acciones de esta naturaleza tales honorarios forman parte de los alimentos de la menor. *Valdés* v. *Tribunal de Distrito*, 67 D.P.R. 310.

*Debe modificarse la sentencia apelada en el sentido de declarar sin lugar la demanda en cuanto a la acción de filiación concierne, y así modificada confirmarse.*

Opinión disidente emitida por el Juez Asociado Señor Todd, Jr.

Disiento. Después de un detenido estudio de la prueba admitida en este caso, soy de opinión que la misma es suficiente para dejar establecida en la demandante la condición de hija natural reconocida del demandado bajo el inciso 2 del párrafo tercero del artículo 125 del Código Civil, ed. 1930, al solo efecto de llevar el apellido de su padre de acuerdo con la sección 2 de la Ley núm. 229 de 12 de mayo de 1942, según fué enmendada por la núm. 243 de 12 de mayo de 1945.

No es que considere que la prueba en los casos que surjan bajo la ley anteriormente citada tenga que ser distinta a la exigida en los casos de filiación ordinarios, sino que de acuerdo con los casos resueltos por este Tribunal con posterioridad al de *Colón* v. *Sucn. A. J. Tristani*, 44 D.P.R. 171, aun cuando en alguno se haya limitado el alcance de aquél, la prueba exigida para dejar establecida la posesión de estado de hijo natural no es la señalada en los casos anteriores al de *Colón* v. *Sucn. A. J. Tristani*, supra, que son los que se citan en la opinión de la Corte.

En el de autos no sólo quedó establecida la paternidad de la demandante sino que hubo prueba de actos realizados por el demandado, suficientes, a mi juicio, para dejar establecido el reconocimiento.

Debería confirmarse la sentencia.

Opinión disidente del Juez Asociado Señor Negrón Fernández.

Porque a mi juicio destruye, en una de sus proyecciones sociales de mayor alcance, la virtualidad de la Ley núm. 229 de 12 de mayo de 1942, según quedó enmendada por la núm. 243 de 12 de mayo de 1945, disiento de la opinión del Tribunal que condena a la menor demandante a seguir llevando el apellido de madre—Vargas—y no el de su padre—Jusino— no obstante haber quedado establecida plenamente su paternidad en esta acción de reconocimiento especial que, para los

fines de llevar el apellido del padre, provee la Ley 229 ya mencionada. Disiento porque considero que las decisiones de este Tribunal—citadas en la opinión— ($^1$) relativas a acciones de reconocimiento de hijos naturales bajo la legislación anterior, no son aplicables a la acción de reconocimiento especial provista por la citada Ley 229; y porque considero que la opinión del Tribunal, lejos de dar cabal expresión al justo sentido del derecho humano que inspira la legislación que nos ocupa, implica una negación del evidente propósito del legislador al adoptar una medida de reparación social como ésta. He de explicarme.

El segundo párrafo de la sección 2 de la Ley 229, que fué agregado a ésta por la 243 de 12 de mayo de 1945, estableció una acción especial de reconocimiento para los hijos que, sin tener la condición de naturales según la legislación anterior, nacieron fuera de matrimonio con anterioridad al 12 de mayo de 1942, fecha de vigencia de la Ley 229. Según el primer párrafo de la sección 2, en vigor desde la aprobación de la ley original, tales hijos podían ser reconocidos por acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, *a todos los efectos legales*. Fué para beneficio de estos hijos, cuando no fueren reconocidos en la indicada forma, que se agregó el párrafo segundo, que dispone:

"En caso de que los hijos a que se refiere esta sección no fueren reconocidos por la acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, dichos hijos se considerarán hijos naturales al solo efecto de llevar el apellido de sus padres. La acción para este reconocimiento se tramitará de acuerdo con el procedimiento que fija el Código Civil de Puerto Rico para el reconocimiento de hijos naturales; *Entendiéndose, sin embargo,* que tal reconocimiento sólo tendrá el alcance que aquí se expresa."

($^1$) *Fontánez* v. *Sucn. Buxó*, 36 D.P.R. 227; *Vega* v. *Sucesión Vega*, 32 D.P.R. 595; *Montalvo* v. *Montalvo et al.*, 25 D.P.R. 858; *Méndez* v. *Martínez*, 21 D.P.R. 252.

En el caso de autos se ejercita la acción especial de reconocimiento de un hijo nacido con anterioridad a la aprobación de la Ley 229, según enmendada, de padres en quienes no concurría la condición de poder contraer matrimonio, sin dispensa o con ella, por estar ya uno de ellos casado en legítimo matrimonio. ¿Qué quiso decir el legislador, a los fines de esta clase de acciones, con que "La acción para este reconocimiento se tramitará de acuerdo con el procedimiento que fija el Código Civil de Puerto Rico para el reconocimiento de hijos naturales"? El criterio del ilustre comentarista Dr. Luis Muñoz Morales, expuesto en sus Anotaciones al Código Civil de Puerto Rico, Libro I, pág. 414, es el siguiente, al analizar el alcance de la enmienda de 12 de mayo de 1945:

"La acción para este reconocimiento, dice la enmienda citada, que habrá de tramitarse de acuerdo con el procedimiento fijado en el Cod. Civil para el reconocimiento de hijos naturales; y por lo tanto habremos de referirnos al artículo 126 según el cual estas acciones sólo podrán ejercitarse en vida de los padres o un año después de su muerte, salvo si los padres hubieren fallecido durante la menor edad del hijo, en cuyo caso éste puede ejercitarla dentro de los primeros cuatro años siguientes a su mayor edad." (²)

A pesar de que en mi opinión disidente en el caso de *Elicier* v. *Cautiño*, 70 D.P.R. 440, 451 (en el cual estaba en-

---

(²) El artículo 126 del Código Civil, ed. 1930, dispone:

"Las acciones para el reconocimiento de hijos naturales, sólo podrán. ejercitarse en vida de los presuntos padres, o un año después de su muerte, salvo en los casos siguientes:

"1. Si el padre o la madre hubiesen fallecido durante la menor edad del hijo, en cuyo caso éste podrá deducir la acción antes de que transcurran los primeros cuatro años de su mayor edad.

"2. Si después de la muerte del padre o de la madre apareciere algún documento de que antes no se hubiese tenido noticia, en el que reconozcan expresamente al hijo.

"En este caso la acción deberá deducirse dentro de los seis meses siguientes al hallazgo del documento.

"El reconocimiento hecho a favor de un hijo que no reúna las condiciones del párrafo primero del artículo 125 podrá ser impugnado por aquellos a quienes perjudique."

vuelta únicamente la interpretación de la frase "podrán ser reconocidos por acción voluntaria de sus padres. . ." contenida en el *primer* párrafo de la sección 2 de la Ley 229, y no —como en el presente—el grado de prueba necesario para declarar con lugar la acción especial de reconocimiento que aquí se ejercita al solo efecto de llevar el apellido del padre) expresé a manera de *dictum* que lo consignado por el legislador en el segundo párrafo de la sección 2 tenía aplicación "en aquellos casos comprendidos en los incisos 3 y 4 del artículo 125 [del Código Civil] que son los verdaderos casos de reconocimiento forzoso, y no a los incisos 1 y 2 ya mencionados",(³) cede ahora mi criterio, sobre la aplicación de los referidos incisos a esta clase de acciones, al más autorizado criterio del ilustre civilista citado.

Su tesis se hace más patente y clara si tenemos presente que las disposiciones del artículo 125 del Código Civil, en su párrafo tercero, establecen como ley sustantiva—y no como trámite procesal—el derecho del hijo al reconocimiento por parte del padre, y la obligación de éste a reconocer al hijo. Exigir para esta acción de reconocimiento especial al único fin de llevar el apellido del padre el grado de prueba que se requiere en casos de reconocimiento de hijos naturales según el concepto del artículo 125 del Código Civil, primer párrafo, antes de la aprobación de la Ley 229, y según la jurisprudencia sentada a la luz de dicho concepto, sería interponer entre el hijo adulterino o incestuoso—a quienes se refiere la

---

(³) El artículo 125 del Código Civil, en su tercer párrafo, dispone que:
"El padre está obligado a reconocer al hijo natural:

"1. Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

"2. Cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos del mismo padre o de su familia.

"3. Cuando la madre fué conocida viviendo en concubinato con el padre durante el embarazo y al tiempo del nacimiento del hijo.

"4. Cuando el hijo pueda presentar cualquier prueba auténtica de su paternidad."

legislación que nos ocupa—y el apellido de su padre, una barrera infranqueable, pues por regla de conducta humana no es corriente que un padre que procrea un hijo bajo circunstancias que le hacen responsable de delito, se incline a hacer ostentación pública y continua de su condición de padre—que es hacerla de la falta cometida. Requerir de un hijo adulterino o incestuoso, que ejercita la acción de reconocimiento especial al único efecto de llevar el apellido de su padre, prueba de la posesión continua de estado de hijo natural, es una contradicción dentro del orden jurídico existente antes de la vigencia de la Ley 229, pues la propia condición de hijo adulterino o incestuoso excluye la posibilidad de haber disfrutado de tal estado. Requerir tal cosa sería atribuir al legislador, al aprobar la enmienda del 12 de mayo de 1945, un propósito inútil.

Si alguna duda hubiere, no obstante, sobre el alcance de tal disposición de la ley, debemos recordar que "El medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al poder legislativo a dictarla." Artículo 19, Código Civil, ed. 1930. Y el propósito fundamental de la enmienda de 12 de mayo de 1945, estableciendo la acción especial de reconocimiento al solo efecto de llevar el apellido del padre, fué indudablemente proveer un nombre al hijo que no tuvo culpa de nacer como fruto del delito, requiriéndolo de aquél que no debe continuar escudándose en su propia falta para negar al hijo el derecho natural de serlo. La citada enmienda, a mi juicio, tiene el efecto de destruir en forma limitada la inmunidad que a tal padre daba el orden jurídico establecido por la legislación anterior, sin alterar en el orden económico, los derechos de la sucesión legítima o natural. Por eso estimo que en esta clase de acciones, establecida satisfactoriamente, como en este caso, la paternidad, debe reco-

nocerse el derecho del hijo a llevar el apellido del padre. Si éste lo es para obligársele a pasar alimentos, según el artículo 128 del Código Civil, ed. 1930, ello es suficiente para obligársele a dar su nombre al hijo. En esta forma se daría cabal expresión al propósito legislativo y no se impondría sobre el padre—ni sobre el orden social establecido—alteración alguna, pues descubierto por la sociedad el hecho de que es padre porque se le impone a éste la obligación de alimentar a un hijo nacido en las condiciones apuntadas, nada sufre ni la sociedad ni el padre con que se reconozca al hijo el derecho a un nombre.

En ese sentido, considero que la enmienda de 12 de mayo de 1945 tiene el efecto de ampliar los derechos de los hijos que bajo la legislación anterior a la Ley 229 se consideraban adulterinos o incestuosos, comprendiendo en el artículo 128 del Código Civil, además del derecho a alimentos, el derecho a llevar el apellido del padre.

No debo cerrar esta opinión sin señalar el criterio liberal adoptado por este Tribunal en el pasado en casos de reconocimiento de hijos naturales bajo la legislación anterior a la Ley 229—*Colón* v. *Sucn. A. J. Tristani*, 44 D.P.R. 171 (1932) —en el cual, por voz del entonces Juez Asociado Sr. Córdova Dávila, se dijo:

"La jurisprudencia del Tribunal Supremo de España exige una prueba robusta, vigorosa, convincente, que revele con certeza indiscutible los vínculos de sangre que unen al hijo con la persona de quien exige el reconocimiento. La severidad de la jurisprudencia española tiene su explicación en la prohibición de la investigación de la paternidad, que impide que estos vínculos de sangre puedan establecerse con prueba de las relaciones de carácter íntimo que mediaron entre los supuestos padres. Pero cuando puede establecerse la naturalidad del hijo mediante prueba de la investigación de la paternidad, *una vez que el tribunal juzgador considera probado este hecho, la discreción judicial debe ser humana, juiciosa y liberal, sin salirse del marco*

*de la ley, para que el hijo encuentre viable el camino de hacer efectivo el deber de reconocerle que su padre contrae al engendrarlo y de exigir los derechos inherentes a su filiación. La paternidad es un elemento del cual no puede prescindir el juzgador,* cuando se ha presentado prueba al efecto, para llegar a una conclusión. De esta prueba pudo prescindirse en España, donde el hijo no estaba autorizado para investigar su origen, y donde 'sigue siendo hijo legítimo del acaso y de lo desconocido,' como muy bien dice Scaevola, 'aunque se evidencie que hubo relaciones sexuales entre varón y mujer, y que de ellas nació el reclamante.' Esto no puede ocurrir hoy en España, donde la nueva Constitución Española dispone que *la filiación no podrá ser fundamento de privilegio jurídico, impone a los padres los mismos deberes para con los hijos legítimos que los ilegítimos* y deja a las leyes civiles la regulación de la investigación de la paternidad. *Esto no debe ocurrir en Puerto Rico, donde la investigación de la paternidad no está prohibida por nuestras leyes."* (Bastardillas nuestras.)

Y tampoco sin señalar con honrosa reverencia las palabras de profunda justicia social vertidas por el hoy juez Presidente retirado Sr. Del Toro en su opinión disidente en el caso de *Ortiz* v. *Dragoni*, 59 D.P.R. 19, 29 (1941):

"No deben existir hijos sin padre. No debe eludirse la responsabilidad que liga al que engendra un ser humano con el fruto de su acto. Una vez que se demuestre la paternidad y que esa paternidad ha sido reconocida de alguna manera por el padre, no debe permitirse que el egoísmo, que las relaciones de familia, que las graves consecuencias materiales y morales que ello generalmente trae consigo, anulen el primer impulso espontáneo a virtud del cual se dejó oír la voz de la naturaleza misma, porque esa primera actuación es la que entraña la verdad y la justicia."

La opinión del Tribunal en este caso proclama que a pesar de tener padre existe una hija sin nombre. Por ello opino que la sentencia de la corte inferior debería confirmarse también en su causa de acción filiatoria reconociendo a la menor demandante el derecho de llevar el apellido de su padre.