BASILISA MÁRTIR CUEBAS, en representación de su hijo menor PEDRO JAIME MÁRTIR, demandante y apelada, *v.* PEDRO HERNÁNDEZ DEL VALLE, demandado y apelante.

Núm. 10458.—*Sometido:* Diciembre 3, 1951.—*Resuelto:* Febrero 12, 1952.

*Santiago Polanco Abréu,* abogado del apelante; *B. Quiñones Elías,* abogado de la apelada.

*Per Curiam:* Declarada con lugar la demanda de filiación en este caso, el demandado apeló y como único error señala el a su juicio cometido por la corte sentenciadora al apreciar la

prueba, ya que sus conclusiones de hecho no sólo no están sostenidas por la prueba sino que son contrarias a la misma. Dichas conclusiones fueron las siguientes:

"1. Que allá por los años 1939, 1940 y 1941 el demandado Pedro Hernández del Valle sostuvo relaciones amorosas con Basilisa Mártir Cuebas, y que como consecuencia de esas relaciones sexuales nació en 16 de enero de 1941, un niño al que se le designó e inscribió con el nombre de Pedro Jaime Mártir.

"2. Que al tiempo de la concepción del indicado menor, tanto la madre del mismo Basilisa Mártir Cuebas como el demandado Pedro Hernández del Valle, eran solteros y no tenían impedimento legal alguno para poder contraer matrimonio entre sí.

"3. Que el demandado contrató y pagó a la comadrona Juana Ortiz para que ésta atendiera a la madre del menor demandante en el alumbramiento del menor en enero de 1941.

"4. Que el demandado atendió a todos los gastos del indicado menor hasta mediados del 1942.

"5. Que la demandante y el demandado no vivieron nunca bajo el mismo techo ni en concubinato público, pero sí sostuvieron relaciones sexuales durante el tiempo indicado en la primera conclusión de hecho.

"6. Que el demandado Dr. Pedro Hernández del Valle frecuentemente acariciaba al niño en su oficina en la Unidad de Salud Pública (Centro Médico de Las Marías), lo acarició en público en una ocasión frente a la Alcaldía de Las Marías y que le admitió a la testigo Luz María Valentín que el niño era hijo de él; que éste le enviaba dinero con Pedro Mártir cada quince (15) días y que estuvo proveyéndolo de dinero y satisfaciendo sus necesidades como hasta año y medio después de su nacimiento.

"7. Que el demandado fué declarado culpable en la Corte Municipal de Mayagüez por abandono de menores por haberle dejado de proveer alimentos a este niño y que luego en apelación el caso fué sobreseído en la Corte de Distrito, sin aparecer de la prueba obrante en autos el motivo legal para tal acción.

"8. Que luego de la vista *de novo* del referido caso de abandono de menores en la Corte de Distrito de Mayagüez, y luego de haber sido éste sobreseído, el demandado continuó pasándole a este menor durante un número de años, la suma de $10 mensuales para sus gastos y necesidades, lo que hacía por conducto de don Manuel Muñoz (Don Nolo Muñoz), vecino del pueblo de Las Marías.

"9. Que en una ocasión el demandado habló con el menor demandante llamándole Pedrito, e invitándole a que se fuera a vivir con él, a lo que se negó el niño porque quería seguir con su mamá.

"10. Que el demandado ha dispensado por cierto número de años al indicado menor el trato, cariño y consideración de hijo, y que por los actos del demandado, dicho menor ha gozado de la posesión del estado de hijo de éste.

"Parece oportuno hacer constar aquí el gran parecido físico entre el demandado y el menor demandante, especialmente en las facciones, cabeza, pelo y ojos de ambos.

"Véase *Montañez* v. *Rodríguez,* 67 D.P.R. 214, página 216.

"Es también significativo que el propio demandado en su turno de repregunta por el abogado de la demandante espontáneamente admitió que en una ocasión, estando de visita en casa de don Adrián Acevedo, amigo íntimo suyo de Las Marías, y sitio donde él almorzaba y se hospedaba cuando iba a dicho pueblo, vió por allí al niño 3 ó 4 veces y admitió además que la familia de don Adrián Acevedo le decía al doctor demandado mientras él estaba de visita en dicha casa 'por ahí pasa el niño'."

Arguye el apelante que la prueba del demandante sobre posesión de estado en este caso consistió en actuaciones aisladas atribuídas al apelante y negadas por éste, no siendo dicha prueba robusta y convincente según lo requiere la jurisprudencia sentada por este Tribunal en distintos casos, siendo el más reciente el de *Vargas* v. *Jusino,* 71 D.P.R. 389.

La prueba creída por la corte inferior es suficiente para sostener la sentencia. Ella demóstró, no un acto aislado de reconocimiento público como fué el caso de *Vargas* v. *Jusino,* supra—y aun en aquél dos jueces, considerando suficiente la prueba, disintieron—sino varios actos de reconocimiento realizados por el apelante a saber: en el centro médico donde trabajaba, en la plaza pública, su admisión a otra testigo de que el demandante era hijo suyo, su requerimiento a éste para que se fuera a vivir con él, unidos todos ellos a los hechos probados de la paternidad del demandante; de haber pagado éste la comadrona, de haberle pasado dinero, primero periódica y voluntariamente a la madre del demandante y luego a virtud de una sentencia judicial—y aun cuando ésta fué dejada sin

efecto en apelación el apelante continuó pasándole al niño durante varios años—todos estos hechos, repetimos, son suficientes para llegar a la conclusión de que el error imputado no fué cometido y que *la sentencia debe ser confirmada.*

El Juez Asociado Sr. Marrero disintió.