ROSA LYDIA ARMAIZ, como madre con patria potestad sobre su hija menor de edad, LILIANA ARMAIZ, demandante y apelada, *v.* SEVERO SANTAMARÍA OTERO, demandado y apelante.

Número 10945.

*Sometido:* 2 de noviembre de 1953.   *Resuelto:* 30 de diciembre de 1953.

*E. Ramos Antonini* y *Álvaro Ortiz,* abogados de la apelante; *José R. Fournier,* abogado de la apelada.

*Per Curiam:* En acción de filiación basada en concubinato y posesión de estado el Tribunal Superior, Sala de Bayamón, dictó las siguientes

*"Conclusiones de Hecho y de Derecho y Sentencia:*

"Este es un caso sobre filiación especial, a los efectos de llevar el apellido, basado en la Ley núm. 243, aprobada el 12 de mayo de 1945.

"Ya este Tribunal desde el 1945 en el caso R-1517, sobre alimentos, había declarado que Liliana Armaiz, la menor, **era hija**

de Severo Santamaría Otero, con derecho a los alimentos. Esta sentencia del citado caso R–1517 fué confirmada por nuestro Tribunal Supremo.

"Entiende el Tribunal que la sentencia dictada en el citado caso R–1517, sobre alimentos, ha causado estado y se ha adjudicado que la niña Liliana Armaiz es hija de Severo Santamaría Otero.

"El Tribunal entiende, además, que de acuerdo con la Ley núm. 243 de 1945 solamente se necesita probar que la menor Liliana Armaiz es hija del demandado para que, por ese solo hecho, se entienda que ella tiene derecho a llevar el apellido del padre.

"La contención del demandado es que no basta que por los Tribunales se hubiera declarado que la menor es hija del demandado ya que lo fué sólo a los efectos de darle alimentos, y ahora debe de probarse otra vez por ella que es hija del demandado a los efectos del apellido. De acuerdo con la Ley núm. 243 de 1945, aunque la hija sea adulterina debe considerársele como natural a los efectos de llevar el apellido. Ya el Tribunal la declaró hija, y sea o no hija del adulterio del padre, dicha ley le da el derecho mínimo de llevar el apellido de éste, quien ahora se lo discute cuando antes le discutió los alimentos.

"Y como ya es una cosa incontrovertible que Severo Santamaría Otero es el padre de dicha menor, y que eso fué así declarado por este Tribunal en la sentencia antes indicada, a los efectos de este caso sobre filiación que estamos resolviendo, sigue siendo Liliana Armaiz hija de Severo Santamaría Otero y como tal hija, de acuerdo con la Ley, tiene derecho a llevar el apellido de Severo Santamaría Otero.

"En tal virtud se ordena que en el Registro Demográfico correspondiente se ponga una nota marginal de donde aparezca que dicha menor Liliana Armaiz debe llevar el apellido de su padre, que es Santamaría.

"La parte demandada pagará las costas, incluyendo la suma de $150 para los honorarios del abogado de la demandante."

En apelación el demandado imputa cinco errores al tribunal sentenciador, siendo el tercero y el cuarto de ellos que dicho tribunal erró "al resolver que basta con probar la paternidad de Liliana Armaiz para que ésta tenga derecho a llevar el

apellido del Sr. Severo Santamaría" y "al dictar sentencia a favor de la demandante y en contra del demandado, no estando tal sentencia sostenida por la prueba."

La acción de filiación en este caso fué instada al solo efecto de llevar la demandante el apellido de su progenitor, de conformidad con la Ley 229 de 1942 ((1) pág. 1297), según quedó enmendada por la núm. 243 de 1945 (pág. 815).(¹)

La única prueba ofrecida por la parte demandante y admitida por el tribunal con la aquiescencia del demandado, lo fué el expediente de la acción de alimentos instada previamente por ella contra el mismo demandado ante el antiguo Tribunal de Distrito de Bayamón. En dicha acción el referido tribunal dictó sentencia declarando a la demandante hija del demandado y condenando a éste a pasar a aquélla por vía de alimentos la suma de $10 semanales. La sentencia así dictada fué confirmada por nosotros en apelación mediante opinión *per curiam* de 13 de marzo de 1946.

Los errores imputados han sido cometidos. En una acción de alimentos sólo se determina la paternidad de la parte reclamante y sus necesidades y la habilidad del demandado para hacer frente a las mismas, fijándose a este último fin la suma correspondiente. En la acción de filiación, por el contrario,

---

(¹) La sección 2 de la Ley 229 de 1942, tal como fué enmendada por la núm. 243 de 1945 dispone:

"Los hijos nacidos fuera de matrimonio con anterioridad a la fecha de vigencia de esta Ley y que no tenían la condición de hijos naturales según la legislación anterior, podrán ser reconocidos por acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, a todos los efectos legales. Estos hijos quedarán legitimados por el subsiguiente matrimonio de sus padres entre sí.

"En caso de que los hijos a que se refiere esta sección no fueren reconocidos por la acción voluntaria de sus padres, y en defecto de éstos, por la de las personas con derecho a su herencia, dichos hijos se considerarán hijos naturales al solo efecto de llevar el apellido de sus padres. La acción para este reconocimiento se tramitará de acuerdo con el procedimiento que fija el Código Civil de Puerto Rico para el reconocimiento de hijos naturales; *Entendiéndose, sin embargo,* que tal reconocimiento sólo tendrá el alcance que aquí se expresa."

no basta que se determinen solamente esos extremos—entre ellos la paternidad—sino que es necesario que se pruebe además cualquiera de los requisitos exigidos por el artículo 125 del Código Civil. ( ² )   En *Vargas* v. *Jusino*, 71 D.P.R. 389, que fué también un caso instado bajo la Ley 229 de 1942, según quedó enmendada en 1945, y en que el supuesto padre era asimismo casado, dijimos a la pág. 392:

"Esa ley sólo tiene efecto prospectivo y el reconocimiento por ella autorizado, ya fuere voluntario o involuntario, ha de ajustarse a lo provisto por el artículo 125, supra.   *Elicier* v. *Sucn. Cautiño*, 70 D.P.R. 432; *Correa* v. *Sucn. Pizá*, 64 D.P.R. 987. *El legislador no hizo distinción alguna entre la prueba requerida en acciones de filiación ordinarias y la necesaria en acciones de filiación instadas por un hijo al solo efecto de llevar el apellido de su progenitor.   No habiéndose hecho tal distinción, debemos presumir que el propósito fué que tanto en una clase de acciones como en la otra la prueba debería ser la misma.   . . .*"   (Bastardillas nuestras.)

---

( ² ) El artículo 125 del Código Civil, ed. 1930, reza así:

"Son hijos naturales los nacidos, fuera de matrimonio, de padres que al tiempo de la concepción de aquéllos hubieran podido casarse, sin dispensa o con ella.

"El hijo natural puede ser reconocido por el padre o la madre conjuntamente, o por uno solo de ellos, en el acta de nacimiento, o en otro documento público.

"El padre está obligado a reconocer al hijo natural:

"1. Cuando exista escrito suyo indubitado en que expresamente reconozca su paternidad.

"2. Cuando el hijo se halle en la posesión continua del estado de hijo natural del padre demandado, justificada por actos del mismo padre o de su familia.

"3. Cuando la madre fué conocida viviendo en concubinato con el padre durante el embarazo y al tiempo del nacimiento del hijo.

"4. Cuando el hijo pueda presentar cualquier prueba auténtica de su paternidad.

"La madre estará obligada al reconocimiento del hijo natural, en los mismos casos que el padre, y además cuando se pruebe cumplidamente el hecho del parto y la identidad del hijo.

"El hijo mayor de edad no podrá ser reconocido sin su consentimiento.

"Cuando el reconocimiento del menor de edad no se realiza en el acta de nacimiento o en testamento, será necesaria la aprobación del juez de la corte del distrito en que resida el menor, con intervención del fiscal.

En lo que a la filiación concernía, la prueba ofrecida únicamente demostró la paternidad, mas no el concubinato ni la posesión de estado alegados en la demanda. Con esa sola prueba la demanda de filiación no debió prosperar.

*Debe revocarse la sentencia apelada y declararse sin lugar la demanda.*

El Juez Asociado Sr. Ortiz no intervino.

---

Opinión disidente del JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ, en la cual concurre el JUEZ ASOCIADO SEÑOR BELAVAL.

La regla sancionada en *Vargas* v. *Jusino*, 71 D.P.R. 389, negando a un hijo nacido bajo la vigencia de la Ley núm. 229 de 12 de mayo de 1942, enmendada por la núm. 243 de 12 de mayo de 1945, el derecho a llevar el apellido paterno—no obstante haber quedado establecida plenamente su paternidad y creado ésta obligaciones legales en el padre—no debería prevalecer más en nuestra jurisprudencia.

Esa misma regla vuelve hoy a negar a otro hijo—cuyo origen se ha establecido y cuyo padre ha sido judicialmente señalado como tal—el derecho a tener nombre.

Ayer fué Claribel Vargas—quien justamente debería llamarse Claribel Jusino—la que inmoló su derecho al apellido paterno porque sólo pudo demostrar quién era su padre. Hoy es Liliana Armaiz—quien justamente debería llamarse Liliana Santamaría—la que inmola ese mínimo derecho que nuestra legislación positiva le reconoce, porque sólo ofreció prueba de una adjudicación judicial previa de paternidad. Como si la paternidad, como verdad jurídica, pudiera relitigarse después de haberse consagrado judicialmente. Como si la paternidad no fuera una sola y, al adjudicarse, no generara, como consecuencia inherente de su propia existencia, el derecho a un nombre, que es con el que comienza el disfrute de su dignidad el ser humano.

Comentando el "silencio prohibitivo" del Código Civil Español sobre el derecho de los hijos adulterinos e incestuosos a

llevar el apellido del padre—estado de derecho cambiado, en su claro propósito de reparación social, por la Ley 229— Scaevola se expresa así:

"Calla el Código sobre uno de los derechos que señala a los otros hijos, como es el de usar el apellido del padre o madre que los reconozca. ¿Lo tendrá el hijo ilegítimo no natural cuando disfrute de alimentos, por concurrir alguna de las circunstancias expresadas en los diversos casos del art. 140? El 139 dice que tendrán sólo derecho a exigir alimentos, omitiendo el de que venimos hablando, mencionado expresamente en el Código tratándose de los legítimos, legitimados y naturales, debiendo, por tanto, deducirse que la ley fundamental civil no les concede tal derecho. Ahora bien; todo individuo desde su nacimiento ha de llevar un apellido. . . . No estamos conformes en modo alguno con el silencio prohibitivo del Código, dimanante del empleo del adjetivo *sólo*. La paternidad y la maternidad lleva, y ha llevado siempre, como consecuencia inherente la de que los hijos puedan usar el apellido de sus padres. Prueba de ello es que esto ha sucedido, a pesar de no contener el derecho sustantivo vigente hasta ahora ningún precepto expreso sobre el particular. Desearíamos, por tanto, que la jurisprudencia viniese a interpretar el silencio de la ley en el sentido favorable al uso por el hijo del apellido paterno o materno, por creerlo conforme a los principios de justicia. Una vez asentada judicialmente la paternidad y maternidad, o sea la causa, precisa admitir el efecto, la filiación, y ésta se acredita ante la sociedad por el uso del apellido." 3 Scaevola, Código Civil, 437–438.

La justicia, en el más depurado concepto de su misión, tiene una función social que realizar y un objetivo humano que atender. No realiza esa función ni atiende ese objetivo la interpretación restrictiva de la Ley 229, contradictoria del propósito de justicia social que la inspiró, y que produce la negación de un derecho que dimana de una relación filial comprobada judicialmente. Dicha legislación no permite que haya más hijos sin nombre—verdaderos parias en nuestra sociedad—cuando tienen padres a quienes el Estado ha señalado como tales, y a quienes impone el cumplimiento de obligaciones específicas que nacen de esa condición. La pater-

nidad no tiene etapas, ni clases, ni grados.   La Ley 229 no requiere, no puede requerir, otra prueba que la de paternidad, *Vargas* v. *Jusino*, supra, op. dis., pág. 396, *Figueroa* v. *Díaz*, ante pág. 163, opinión propia.   Por eso disiento.